# GENERAL COURT, MAY TERM, 1805.

## BROSIUS *vs.* REUTER, *et al.*

MANDAMUS to restore, or cause to be restored, the prosecutor into the place and function of minister of *"The Saint John's German Catholic Church of Balti-* In a return to a *mandamus* the same certainty is required as in declarations and pleadings, nothing can be supplied by intendment or inference.

The facts stated in a return to a *mandamus* are supposed to be true and are not traversable. If they are false, the remedy is by action against the persons making the return.

The return to a *mandamus* held to be insufficient, in not showing and setting forth with precision and certainty the rules, laws and canons, of the church, &c.

MAY. 1805

Brosius
vs
Reuter

*more,"* in the city of Baltimore, and to the use of the pulpit and altar of the said church, and of the parsonage house thereof, and of all and singular the effects, property, rights, privileges, liberties and functions, to the said church, altar and pulpit, and to the office and duty of rector or priest of the said congregation, in any wise belonging or appertaining, or to signify to the court here cause to the contrary thereof, &c.

*Proof* was made of a service of the *mandamus* on each of the defendants.

The defendants made the following return, to wit: We, *Cæsarius Reuter*, *&c. &c.* the parties to whom the writ hereto annexed is directed, by virtue of the writ aforesaid, do most humbly certify to the judges of the general court, sitting in the general court for the western shore of Maryland, that the persons named in the said writ are members of a congregation of christians, associated together for the purpose of divine worship in the city of Baltimore, and Baltimore county, and are denominated *"The Saint John's German Catholic Church of Baltimore."* We do further certify, that the said *Cæsarius Reuter* was duly elected and chosen, by a majority of the members of the said congregation, minister thereof, and that he still continues to exercise his ministerial functions with the approbation and consent of the said majority. And we do further certify, that the said *Cæsarius Reuter* was put into possession of the church of the said congregation, and of the use of the pulpit thereof, as minister of the said congregation, with all the liberties, privileges and advantages, to that place and function belonging and appertaining, and that the said minister, so elected and put into possession, holds the place and function of minister of said congregation, by the will and assent of a majority of the members of the said congregation. And we do further certify, that the said *Francis X. Brosius* has been appointed minister by the Right Reverend *John Carroll*, Bishop of Baltimore, without the previous consent and approbation of the majority of the members of

the said congregation, and in opposition to their de-
clared wishes and choice, and contrary to the rules,
laws and canons of the Catholic Church.   And we
do further certify, that by the fundamental laws,
usages and canons, of the German Catholic Church
aforesaid, to which we belong, that the members of
the church, who found and built and contribute to the
support of the church and the pastor thereof, have
the sole and exclusive right of nominating and ap-
pointing their pastor, and that no other person,
whether bishop or pope, has a right to appoint a
pastor without the assent and approbation of the con-
gregation, or a majority of the same.   And we do
further certify, that the said *Cæsarius Reuter* is a re-
gular clergyman belonging to the society called *"The
Minorits Conventuals of the Order of Saint Francis,"*
and that the said *Cæsarius Reuter* was sent back
to the United States to found a German Catholic
Church in Baltimore, according to the law of the
said United States; and that in virtue of the said au-
thority, he the said *Cæsarius Reuter*, and a majority
of the congregation aforesaid, did build, found, and
erect the said church, called *"The Saint John's Ger-
man Catholic Church of Baltimore,"* and did place the
said church under the sole and exclusive control of the
said order according to the law of the United States;
of which said church the said *Cæsarius Reuter* was
put and appointed pastor, and still continues so to be;
and that by the canonical law of the Catholic Church
aforesaid, the said *Cæsarius Reuter* owes obedience to
the magistrate, and to said order, and to no other ec-
clesiastical person or body whatsoever.   And there-
fore we cannot, nor can either of us, restore the said
*Francis X. Brosius* into the said place and function
of minister of the said church, called *"The Saint
John's German Catholic Church of Baltimore,"* and to
the use of the church of the said congregation, and
the pulpit thereof, as minister of the said congrega-
tion, with all liberties, privileges and advantages, to
that place and function belonging, as by the writ afore-
said we are commanded.   In witness whereof we here-

MAY 1805,

Brosius
vs
Reuter

to set our hands and seals this 13th day of May, in the year of our Lord 1805.

*Frid. Cæsar. Reuter. (L. S.)*

And also signed and sealed by the other defendants.

*Harper,* for the Prosecutor, moved the court to *quash* the return for insufficiency, for the following reasons:

1. The return states that they belong to "*The Saint John's German Catholic Church of Baltimore,*" (which is a congregation professing the Catholic religion,) and then states, that by the canons, &c. of *that congregation,* a majority may appoint, but does not shew that in the Roman Catholic Religion, a particular congregation can have separate canons.

This being material, must be positively shewn, and cannot be made out by inference or intendment.

2. It states, that the bishop appointed the prosecutor, "contrary to the rules, laws and canons of the Catholic Church," without shewing in what respect the appointment was contrary to those rules, laws and canons, or what those rules, laws and canons are.

3. It states, that the said *Cæsarius Reuter* was elected and put into possession by a majority, without shewing when and where the said election took place, and how many members of the congregation there were at the time of the said election, and how many voted for the said *Reuter;* and that the meeting for the purpose of such election was held pursuant to the canons.

4. It states, that by the canons, laws and usages, of the German Catholic Church aforesaid, the members who found and build a church, and who contribute to the support of it, and of the minister, have the sole and exclusive right of nominating and appointing their pastor; but does not shew particularly what those canons, laws and usages are, nor how they were established.

5. It states, that the said *Reuter,* and a majority of the congregation, did erect the said church, and did place it under the direction of the society or order called "*The Minorits Conventuals of the Order of Saint*

*Francis,*" without shewing when and by what persons particularly, and in what manner the said acts were done; and how many members there were of the said congregation at the times of doing those acts respectively, and the particular canon or laws by virtue of which the said acts are respectively supposed to have been done.

6. It states, that the said church was built and founded by authority from the aforesaid order or society, without shewing the nature and extent of that authority, or the manner in which it was given, or the power of the said order or society to give such authority.

7. It states, that by the canonical law of the Catholic Church, the said *Reuter* owes obedience to the said order, and to no other ecclesiastical person or body whatsoever, without shewing particularly what that canonical law is.

8. It states, that the persons named in the return are members of "*The Saint John's German Catholic Church of Baltimore,*" and that they, with a majority of the members, did certain acts, without shewing how they respectively became members, or what number of persons joined with them in doing the said acts, and how those persons became members.

9. It claims an absolute exemption from ecclesiastical discipline and authority, which is inconsistent with the known rules and constitution of the Roman Catholic Religion, and is not warranted by the laws or constitution of this state or of the United States.

10. It does not shew that the prosecutor was removed.

It is a general principle, he said, that every return to a *mandamus* to be good must be a complete answer to the writ. *The King vs. The Mayor of Abingdon, Salk.* 433. *S. C.* 1 *Ld. Raym.* 559. The writ in this case, says the prosecutor was duly inducted, &c. The return does not say the prosecutor was not appointed, or that being appointed and inducted he has been duly and properly removed from the office. The defendants admit he was appointed, but they say he was

MAY 1805.

Brosius
vs
Reuter

not *duly* appointed. Every thing alleged in the return must be stated with certainty. There must be the same certainty in the return to a *mandamus* as in pleadings. For the certainty required in pleadings, and in the returns to writs of *mandamus*, he cited 5 *Com. Dig.* 7, 32, 33, 48. 4 *Com. Dig.* 215. *Burr.* 731. 3 *Salk.* 430, 433. 1 *Show.* 282. 6 *Mod.* 309· 1 *Stra.* 64. 2 *Ld. Raym.* 1566. 5 *Mod.* 258, 259. It is admitted that the prosecutor was appointed by the bishop; but it is said he was not appointed with the consent of a majority, and the appointment by the bishop alone was not legal—that a majority are to control. It does not appear that a majority had a right to control the appointment, and unless it is shewn why they had a right to control, the appointment must be considered as legal. The constitution which gives the right should be set forth, and it ought to be shewn they had the right. The matter must be so alleged that the court may judge. *Salk.* 433. The return in this case does not state that the bishop did not afterwards make the appointment with the consent and approbation of a majority. The return does not set out the canons of the church. There is a contradiction in the return. It is said the appointment is to be governed by the Roman Catholic Church, and afterwards it is stated it was to be made by a majority, &c. Inconsistency in a return to a *mandamus* is a fatal objection. *Salk.* 436. The return states, that the majority has a right to appoint, and that *Reuter* was appointed by a majority; but it does not shew the right of the majority to appoint. In the case of *Runkel vs. Winemiller,* (*4 Harr. & M·Hen.* 429,) a very special return was made. But this court said such matter must be set forth to shew the appointment was by a majority. The court in that case held all the objections to the return to be fatal, and particularly that which is the subject matter of the *9th objection* to the present return. There has been sufficient proof to this court that the prosecutor has the right, and unless the return is sufficient, a peremptory *mandamus* will issue. The prosecutor has been appointed

by the bishop, and the court are competent to notice that the bishop has the superintendance of, and control over the church; and unless it is shewn to be otherwise, his appointment must be considered the proper and legal appointment.

*Hollingsworth* and *Kell,* on the same side.

*Martin,* (Attorney General,) *Purviance* and *Boyd,* for the Defendants.

CHASE, Ch. J.*(a).* In the return to a *mandamus* the facts, which are requisite to justify a refusal to restore, must be stated with precision and certainty. A defective and incomplete statement of facts cannot be aided or supplied by intendment or inference. All the authorities support the position, that the same certainty is required in a return to a *mandamus* as is necessary in declarations and pleadings. The facts exhibited in the return must appear to the court to be a complete justification for refusing to restore, or the court will order a peremptory *mandamus;* and certainly there cannot be any thing better established than that *necessary facts not stated* are not inferrable or to be intended from facts which are set forth. The facts set forth in the return are supposed to be true, and are not traversable; and the court must decide, whether they are a sufficient and legal cause to justify the refusal to restore, Should the statement of facts in the return be false, the remedy is by action against the persons who make the return, and to whom the *mandamus* was directed.

These principles being recognized will lead the court to a right decision in this case.

The court are of opinion, that the return of *Cæsarius Reuter,* &c. &c. to the writ of *mandamus* in this case, is insufficient and defective in law, in not shewing and setting forth, with precision and certainty, the rules, laws and canons, of the Catholic Church, which render the appointment of *Francis X. Brosius,* minister of *"The Saint John's German Catholic Church*

*(a) Done,* J. absent. *Sprigg,* J. concurred.

MAY 1805

Brosius
vs
Reuter

of *Baltimore,*" by the Right Reverend *John Carroll,* Bishop of *Baltimore,* unlawful, without the previous approbation of the majority of the members of the congregation of the said church.

In not setting forth the fundamental laws, usages and canons, of the said German Catholic Church, which vest the right and power of nominating and appointing the pastor of the said church exclusively in the members thereof who did found and build the same, and do contribute to the support of the said church and pastor thereof.

In not setting forth the rules and canons of the said church which make the assent and approbation of the congregation of the said church, or a majority of them, necessary to validate the appointment of the pastor by the said bishop.

In not setting forth any rules or canons of the said Catholic Church, whereby "*The Saint John's German Catholic Church of Baltimore*" is placed under the superintendence and control of the society called "*The Minorits Conventuals of the Order of Saint Francis,*" in exclusion or derogation of the authority of the Pope, and of the said *John Carroll,* Bishop of Baltimore.

And thereupon the Court *quash* the said return, and order a peremptory *mandamus* to issue to the Reverend *Cæsarius Reuter,* &c. &c. to restore, &c.

RETURN QUASHED, &c.