ROBERT G. SMITH ET AL. *v.* THELMA T. EDWARDS ET AL.

[No. 1425, September Term, 1979.]

*Decided September 5, 1980.*

The cause was argued before THOMPSON, J., and CLAYTON C. CARTER, Associate Judge of the Second Judicial Circuit and M. ALBERT FIGINSKI, Associate Judge of the Eighth Judicial Circuit, specially assigned.

*Albert D. Brault,* with whom were *Brault, Graham, Scott & Brault* on the brief, for appellants Smith, Murphy, Shlefstein, Hendley, DeRocco, Tauben and Tavani. *Edward L. Genn* for appellants Friendship Heights and The Hills and Friendship Heights Village Council.

*James L. Thompson* and *Jody S. Kline,* with whom were *Miller, Miller & Canby* on the brief, for appellees.

THOMPSON, J., delivered the opinion of the Court.

Thelma T. Edwards, et al., as resident taxpayers of a "special tax area or district" now called The Village Council

(formerly known as Friendship Heights, The Hills or as Friendship Heights Citizens Committee) (Committee) filed suit against members of the governing body of the Committee, as individuals, seeking to recover for the benefit of the special taxing district, funds which were alleged to have been expended without legal authority. The Committee was permitted to intervene in the suit as a party defendant and together with Robert G. Smith and the other individual defendants constitute the appellants. The Circuit Court for Montgomery County found in favor of the complainants below, the appellees here, gave declaratory relief, entered judgment against the individual appellants for the sum of $16,961.67 plus interest, and directed that $15,000 of the fund be paid to the appellees' attorneys as fees in the instant suit.

The alleged *ultra vires* actions of which the appellees complained have been narrowed to four; all involve the expenditure of tax monies for litigation in which the Committee voluntarily became involved. The actions were:

(1) The first cases were known as Marina Apartments cases. In 1972 the Committee engaged counsel and sought unsuccessfully to intervene in this litigation which arose over the application of the Marina Apartments, Inc. to build a 353 unit highrise condominium within Friendship Heights, a project which the Committee opposed. The litigation terminated in *Board of Appeals of Montgomery County v. The Marina Apartments, Inc.,* 272 Md. 691, 326 A.2d 734 (1974) with the builder as the successful litigant.

(2) The next group were known as the One Park North cases. This litigation involved an application by One Park North Associates (OPNA) to construct a two-level retail store and office complex in Friendship Heights, to which the Committee was opposed. The litigation arose over a decision of the Board of Review of the Department of Health and Mental Hygiene to allow sewers for the project despite a sewer moratorium. The Committee engaged counsel who represented it before the Board of Review and the Circuit Court for Montgomery County, and noted an appeal. The decision of the Court of Appeals in a related case,

*Montgomery County v. One Park North Associates,* 275 Md. 193, 338 A.2d 892 (1975) rendered moot the Committee's appeal. The office complex was, however, never constructed.

(3) The next cases were the appeals that arose out of the County's sectional map amendment to the zoning ordinance, which in 1974 downzoned properties in Friendship Heights. The Committee favored this action by the Council and authorized the expenditure of tax monies to support the downzoning and to oppose the appeals. The appeals were consolidated and heard together. At its request, the Committee was allowed by the trial judge to intervene and participated as a party at the trial level and on appeal. The appellate decision, *Montgomery County v. Woodward & Lothrop, Inc.,* 280 Md. 686, 376 A.2d 483 (1977), *cert. denied, sub nom. Funger v. Montgomery County,* 434 U.S. 1067, 98 S. Ct. 1245, 55 L. Ed. 2d 769 (1978), affirmed the downzoning.

(4) The final *ultra vires* act alleged by the appellees was the funding by the Committee of a study by a professional survey group known as the Public Interest Economic Foundation (PIEF). In the introduction to its report, the Foundation notes that, at its cost and that of the Committee, it had made "a broad study of the costs and benefits of alternative zoning proposals for the Friendship Heights area of Montgomery County. . . ." Essentially, the report advocates lower density zoning in Friendship Heights.

The evidence shows expenditures of $120.00 for attorneys' fees in the Marina Apartment cases, $4,446.67 for litigation costs in the OPNA cases, $4,425.00 for attorneys' fees in the zoning cases and $8,000.00 for the PIEF study. It is clear that the PIEF study was conceived and authorized for use at the County Council's hearing on its downzoning proposal but that the study was also used for litigation purposes in the zoning appeal cases.

We shall discuss separately the issues raised in this appeal.

I. The Committee's Actions were *Ultra Vires.*

The appellants first argue that the four complaints, set out

456

previously, were within the corporate powers of the special tax district. We think this question was adequately disposed of by *Barlow v. Friendship Heights Citizens' Committee,* 276 Md. 89, 344 A.2d 415 (1975), wherein the Court said:

"In *Friendship Heights v. ·Funger,* 265 Md. 339, 289 A.2d 329 (1972), we held that the Friendship Heights Citizens' Committee (the Committee), an elected body which administers a special tax area or district consisting of Friendship Heights and The Hills, two subdivisions located in Montgomery County, lacked the power to bring an action for declaratory and injunctive relief challenging the validity of the rezoning of an 18-acre tract adjacent to Friendship Heights, but beyond the limits of the special tax area.

"Our reasoning was that the Committee was not expressly granted the power to sue and be sued, and was specifically excluded by Maryland Code (1957, 1973 Repl. Vol.) Art. 23A, § 9 (a) from the definition of a municipal corporation, which is expressly granted the power to sue and be sued by Art. 23A, § 1, and neither exercised any regulatory powers, nor was vested with any planning or zoning function.

"We reserved for another day, however, a consideration of the question whether the power to sue could be implied from a power expressly granted the Committee." (footnote omitted).

The Court then disposed of the implied power question as follows:

"The threshold question in this case is whether the power of the present Committee to bring suit against the individuals who constituted its pre-decessor in office or against Suburban can be implied from any of the powers expressly granted. We think that it cannot because of the narrow scope of those powers. But this does not necessarily end

the matter. Montgomery County Code (1972) § 66-4 prescribes that members of the Committee upon election must take an oath 'to diligently and faithfully discharge the duties of the office.' From this can be implied a power to seek redress on behalf of the special tax area if it is believed that tax monies have been diverted to the benefit of individual members of the Committee or have been improperly expended with the concurrence of Suburban for illegal or ultra vires purposes. Even under the *Dillon* rule it has long been recognized that such powers as are necessary in the performance of a duty imposed or the accomplishment of a stated purpose may properly be implied. *See Heiskell v. Baltimore,* 65 Md. 125 at 148, 4 A. 116 at 118 (1886)." *Id.* at 90-91, 94-95.

In view of the very narrow construction the Court has put on the powers of the Committee, the appellants' attempt to show that its actions in the instances noted was within its corporate powers is difficult to follow. The argument goes as follows:

The Committee's powers are expressly set out in Section 66-2 and 66-9 of the Montgomery County Code (1972). Section 66-2 says in substance that the taxes which the law authorizes to be collected shall be paid over to the treasurer of the Committee for certain purposes:

"All of the funds shall be used directly by or through the village council exclusively for opening, improving, widening, maintaining, repairing and lighting the streets, roads, lanes, alleys, sidewalks, parking, drainage, *sewerage,* sanitation and other village improvements, and for furnishing police and fire protection, clerical and *other public service,* including the removal of ashes, garbage and other refuse and the disposal thereof. (Mont. Co. Code 1965, § 66-2; 1914, ch. 131, § 2; 1951, ch. 558, § 1; 1975, ch. 779). (emphasis added).

458

Section 66-9 provides the Committee is empowered as follows:

"(a) The 'Friendship Heights Village Council' may grade, pave, macadamize or otherwise improve any existing dedicated street, road or lane, or any county road, street or lane, within the special taxing area which has been or which may be acquired and opened for public use and to lay sidewalks and curbs thereon, and, subject to the approval of the county council of Montgomery County and after due publication of cost thereof, to assess the cost of the grading, paving, macadamizing, laying sidewalks and curbs, or otherwise improving, against the property abutting on that portion of the street, road, lane or sidewalks so improved, in proportion to the frontage of the abutting property; provided, the consent to the proposed improvements of the owners of two-thirds of the abutting property shall first have been obtained."

The argument then proceeds to emphasize the underlined portions. In making the argument appellants overlook that sewerage, in the taxing district at the time of the *ultra vires* acts, was within the exclusive jurisdiction of the Washington Suburban Sanitary Commission (WSSC). As the Court said in *Board of Appeals of Montgomery County v. The Marina Apartments, supra,* 272 Md. at 698-99:

"We now analyze, in the light of this local law-general law distinction, the authority of Montgomery County and that of the WSSC, in order to determine which one of these two has the superior power to make sewer availability decisions. It is abundantly clear that the WSSC, established for the purposes of coordinating and maintaining the entire public sewer system in the Sanitary District which is largely contiguous to the District of Columbia and operating pursuant to Chapter 122 Laws of Maryland (1918), as from time to time

amended, is a creature of the general law as contemplated by the Maryland Constitution, because the Sanitary District encompasses portions of both Montgomery and Prince George's counties. And '[a]ny law so drawn as to apply to two or more geographic subdivisions of this State shall not be decreed a Local Law. . . .' Art. XI-A, § 4. See *Bowie v. Wash. Sub. San. Comm'n, supra* at 616; *Neuenschwander v. Wash. San. Com., supra* at 75. It follows from this that the WSSC's jurisdiction, which it possesses under the Public General Law, to authorize sewer service cannot be countermanded by a board established under local law to enforce a local building code. Therefore, even though § 114.1 adopted by the Montgomery County Code may be interpreted on its face as granting broad power to the County in this sewer availability area, this authority may not be exercised so as to impinge upon the decisions made by the WSSC under its general law jurisdiction."

In making their argument appellants also overlook that zoning is entirely outside the powers of the taxing district. *Perry v. Board of Appeals,* 211 Md. 294, 127 A.2d 507 (1956). The appellants nevertheless argue that the words in their charter authorizing the expenditures for "other public service" would cover the *ultra vires* acts. If that argument were sound the taxing district's powers would be limited only by constitutional prohibitions against spending public funds for private purposes. The Court of Appeals by its language and by its holdings in the above cited cases permits no such enlargement of the powers of the taxing district. We think its powers under the "other public service" clause are limited to those which bear some relationship to the powers expressly granted.

We also agree with the chancellor that the Committee's ownership of a small park was in no way involved in the *ultra vires* litigation, but is rather an afterthought to support otherwise blatant disregard of taxing district's powers.

## II. Liability of Individual Village Council Members for Funds Expended.

Appellants argue that as the defendants were public officials they are protected from this suit by governmental immunity. The argument is without substantial basis. The case of *Gloyd v. Talbott,* 221 Md. 179, 156 A.2d 665 (1959) affords authority for the award of money judgments against members of the governing body of a municipality for the use and benefit of the municipality in cases where the said members illegally authorize the expenditure of public funds. Governmental immunity was not even discussed. Appellants also allege that their actions were without malice and thus individual council members were entitled to qualified immunity. We are unable to follow the argument because qualified immunity applies to actions for tort and has no application to acts which are *ultra vires.* There is some limited authority that municipal officials might be held not personally liable where their *ultra vires* actions are not unreasonable. 2A *Antieau, Municipal Corporation Law,* § 22.69 (1976). We think the actions of the Committee here, however, were unreasonable when in case after case, beginning in 1956 with *Perry v. Board of Appeals, supra,* the Court pointed out that the taxing district was only a "quasi municipal corporation" with very limited powers.

## III. The Demand for a Jury Trial and Transfer to the Law Side of the Court

Appellants argue that the chancellor in ruling on the two motions denied them a trial by jury as guaranteed under Art. 23 of the Maryland Declaration of Rights which in pertinent part provides as follows:

> "The right of trial by Jury of all issues of fact in civil proceedings in the several Courts of Law in this State, where the amount in controversy exceeds the sum of five hundred dollars, shall be inviolably preserved."

This language is identical with former Art. 15, § 6 of the Maryland Constitution. This latter provision has been

construed to mean a right to a jury trial as that right existed when the Constitution was adopted. *Knee v. Baltimore City Passenger Railway Co.,* 87 Md. 623, 40 A. 890 (1898). In *Bringe v. Collins,* 274 Md. 338, 346, 335 A.2d 670, *application denied,* 421 U.S. 983, 95 S. Ct. 1986, 44 L. Ed. 2d 475 (1975), the Court said:

> "Article XV, § 6, of the Maryland Constitution, like the Seventh Amendment, guarantees a right to a jury trial in actions at law, where historically there was a right to a jury trial, as opposed to equitable action where there was no such right. *Pernell v. Southall Realty, supra,* 416 U.S. at 374-375; *Curtis v. Loether, supra,* 415 U.S. at 193-197; *Knee v. City Pass. Ry. Co.,* 87 Md. 623, 624, 40 A. 890 (1898)."

As the bill of complaint here requested an injunction, the suit was properly brought in equity and a jury trial was not required. *See, Automatic Retailers of America, Inc. v. Evans Cigarette Service Co.,* 269 Md. 101, 105, 304 A.2d 581 (1973), where the Court said:

> "The continuation of these [equity] proceedings is proper, as once equity has obtained jurisdiction, it may continue to resolve the dispute between the parties though the equitable issues have dissipated and only legal issues survive."

Appellants misplace reliance on *Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 82 S. Ct. 894, 8 L. Ed. 2d 44 (1962), a decision of the United States Supreme Court premised upon the Seventh Amendment to the United States Constitution and federal practice. The Court of Appeals has refused to engraft the federal Seventh Amendment to our state court proceedings, *see Bringe v. Collins, supra. See also, Thompson v. Giordano,* 16 Md. App. 264, 270-1, 295 A.2d 881 (1972). If the *Dairy Queen* rule had been adopted, a decision such as *Automatic Retailers of America, Inc. v. Evans Cigarette Service Co., supra,* would not be in the books. *See also, Kramer v. Kramer,* 26 Md. App. 620, 634, 339 A.2d 328 (1975).

## IV. Allowance of Attorneys Fees

Appellants assert that it was improper for the trial court to order the appellants to pay $15,000 of the $16,961.67 damages as attorney's fees. Although the law is clear that attorney's fees are not ordinarily awarded as part of the costs, *Empire Realty Co. v. Fleisher,* 269 Md. 278, 305 A.2d 144 (1973), courts have adopted a common fund doctrine under which counsel fees may be awarded where a taxpayer's suit has resulted in the creation of a fund for the benefit of the taxpayers. *See, e.g., Nance v. Town of Oyster Bay,* 54 Misc. 2d 274, 282 N.Y.S.2d 324 (1967), *aff'd,* 30 App. Div. 2d 918, 293 N.Y.S.2d 704 (1968); *Weiss v. Bruno,* 83 Wash. 2d 911, 523 P.2d 915 (1974); *Annot.* 89 A.L.R.3d 690 (1979). The doctrine is based on the idea that, where a taxpayer has gone into court taking the risk of litigation upon himself, and has thereby conferred a benefit upon other taxpayers similarly situated, it is equitable to allow counsel fees out of the recovery. This doctrine has been recognized in Maryland in *Terminal Freezing and Heating Co. v. Whitelock,* 120 Md. 408, 87 A. 820 (1913) and *Estate of Leiman,* 32 Md. 225, 3 Am. Rep. 132 (1870), although these cases did not involve recovery by taxpayers.[1]

*City of New Carrollton v. Belsinger Signs, Inc.,* 266 Md. 229, 292 A.2d 648 (1972), cited by appellants for the proposition that attorney's fees are not properly awarded in a taxpayer's suit against a municipality, is distinguishable. In that case, the taxpayer sought a declaratory judgment and injunctive relief against the municipality. No damages were awarded. The common fund theory would not apply there where there was no fund recovered from which attorney's fees could be awarded.

---

1. Whitelock involved a common fund recovered for a committee of bondholders. Leiman involved a fund recovered for the benefit of creditors. It should be noted that in both of those cases the beneficiary of the suit had refused to bring the action. In the instant case the individual appellees were in control of the quasi corporation beneficiary at the time the suit was brought. Under these circumstances it is obvious that a demand that the taxing district sue its own governing body would have been futile.

Appellants also argue that damages, including attorney's fees, may not be paid by a state agency in the absence of an appropriation for such a purpose, citing *Board of Trustees v. John K. Ruff, Inc.*, 278 Md. 580, 366 A.2d 360 (1976) and *University of Maryland v. Maas*, 173 Md. 554, 197 A.2d 123 (1938). This principle has no application here because the funds with which to pay the counsel fees are the funds that the committee is recovering from the individual defendants and the order specifically directs that the fees be paid from that fund.

## V. Other Issues

Although appellants suggest other grounds for reversal or modification of the decree, there are no arguments to support the suggestions so we decline to discuss them. *Jacober v. High Hill Realty, Inc.*, 22 Md. App. 115, 321 A.2d 838, *cert. denied*, 272 Md. 743 (1974).

## VI. Motions

All pending motions in this appeal are denied.

*Decree affirmed.*
*Appellants to pay the costs.*