669 A.2d 1352

**HESS CONSTRUCTION COMPANY**

**v.**

**BOARD OF EDUCATION OF PRINCE GEORGE'S COUNTY.**

**No. 37, Sept. Term, 1995.**

Court of Appeals of Maryland.

Jan. 17, 1996.

156

William Karl Wilburn (Seyfarth, Shaw, Fairweather & Geraldson, on brief) Washington, DC, for Petitioner.

Maurice Baskin (Venable, Baetjer, Howard & Civiletti, on brief) Washington, DC, for Amicus Curiae.

Sheldon L. Gnatt (Reichelt, Nussbaum, LaPlaca & Miller, on brief), of Greenbelt, MD, for Respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

RODOWSKY, Judge.

Maryland Rules, Chapter 1100, "Special Proceedings," Subtitle BE, "Mandamus," Rule BE44, "Damages," provides:

"In an action brought pursuant to this Subtitle, the plaintiff shall have the right to claim and prove his damages, if any, and the court, in entering judgment that the writ of mandamus shall issue, may also award such damages to the plaintiff as he shall have proven."

The petition for certiorari in this case presents this question: "Is the Petitioner entitled to recover attorney's fees under Rule BE–44 or in actions for mandamus generally?" The Court of Special Appeals answered in the negative. *Hess Constr. Co. v. Board of Educ. of Prince George's County*, 102 Md.App. 736, 651 A.2d 446 (1995). We agree with the Court of Special Appeals for the reasons set forth below.

Respondent, The Board of Education of Prince George's County (the Board), in November 1993 issued a request for lump sum sealed bids for the construction of an elementary school in Laurel. Maryland Code (1978, 1992 Repl.Vol., 1995 Cum.Supp.), § 5–110(c)(1) of the Education Article (Ed.) required the Board to award the contract to "the lowest responsible bidder who conforms to specifications with consideration given to" certain enumerated factors. After bid opening the Board notified the petitioner, Hess Construction Company (Hess), that it was the lowest bidder and that the contract would be awarded to it at the next Board meeting. The next lowest bidder, however, challenged award of the contract to Hess, alleging that Hess's bid was nonresponsive to the bidding requirements. At its meeting in December 1993 the Board rejected all bids and determined to readvertise the entire project.[1]

Hess instituted the instant action against the Board in the Circuit Court for Prince George's County. The relief sought included a writ of mandamus and attorney's fees. The circuit court issued a preliminary injunction against resolicitation of bids on the project. Following a four day trial on the merits in February 1994, the circuit court entered judgment in favor of Hess, issuing a "mandamus" directing the Board to award

---

1. Ed. § 5–110(c)(2) provides that "[t]he County Board may reject any and all bids and readvertise for other bids."

the contract to Hess. The Board did not appeal from the judgment adverse to it.

In an oral opinion at the end of the trial the circuit court indicated that it intended to award attorney's fees to Hess, but the court deferred entering any order on that issue, pending briefing and further argument. In a legal memorandum to the circuit court Hess argued that "[i]n this case, the legislative authority for the award of attorneys' fees is set forth in Maryland Rule BE 44." The circuit court nevertheless concluded that it was "confined by the law," stating that "[t]he general rule in Maryland is that attorneys fees are not recoverable unless approved by statute or contract."

Hess appealed to the Court of Special Appeals. There Hess argued that "damages" as used in Rule BE44 included attorney's fees, based on history, certain decisions by other courts, and Maryland public policy. The Court of Special Appeals affirmed the circuit court.[2]

■■ The "American Rule" is that attorney's fees are ordinarily not recoverable by a prevailing party in a lawsuit. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141, 147 (1975). "In Maryland, '[t]he general rule is that costs and expenses of litigation, other than the usual and ordinary Court costs, are not recoverable in an action for [compensatory] damages.'" *Collier v. MD–Individual Practice Ass'n*, 327 Md. 1, 11, 607 A.2d 537, 542 (1992) (quoting *McGaw v. Acker, Merrall & Condit Co.*, 111 Md. 153, 160, 73 A. 731, 734 (1909)). *Compare St. Luke Evangelical Lutheran Church, Inc. v. Smith*, 318 Md. 337, 568 A.2d 35 (1990) (permitting counsel fees of prevailing

---

2. In the circuit court and in the Court of Special Appeals, Hess also argued that counsel fees could be awarded to it based on the collateral litigation rule, recognized in *McGaw v. Acker, Merrall & Condit Co.*, 111 Md. 153, 73 A. 731 (1909). That theory for the award of counsel fees is not predicated on a request for mandamus relief. The collateral litigation theory is not embraced within our grant of certiorari. In any event, Hess was not engaged in litigation with a third party. Its litigation was with the Board.

party to be considered where punitive damages may be awarded).

■■■■ Attorney's fees may be awarded where a statute allows for the imposition of such fees, *Freedman v. Seidler*, 233 Md. 39, 47, 194 A.2d 778, 783 (1963); *Mercedes–Benz of North America, Inc. v. Garten*, 94 Md.App. 547, 618 A.2d 233 (1993), and where parties to a contract have an agreement regarding attorney's fees. *Empire Realty Co. v. Fleisher*, 269 Md. 278, 286, 305 A.2d 144, 148 (1973) (citing *Webster v. People's Loan, Savings & Deposit Bank*, 160 Md. 57, 152 A. 815 (1931)). Where the wrongful conduct of a defendant forces a plaintiff into litigation with a third party, the plaintiff may recover from the defendant, as damages, reasonable counsel fees incurred in the action with the third party. *McGaw*, 111 Md. at 160, 73 A. at 734. *See also Empire Realty Co.*, 269 Md. at 286, 305 A.2d at 148; *Fowler v. Benton*, 245 Md. 540, 550, 226 A.2d 556, 563, *cert. denied*, 389 U.S. 851, 88 S.Ct. 42, 19 L.Ed.2d 119 (1967); *Bohle v. Thompson*, 78 Md.App. 614, 639–40, 554 A.2d 818, 830–31, *cert. denied*, 316 Md. 364, 558 A.2d 1206 (1989). Additionally, a plaintiff in a malicious prosecution action, who has incurred counsel fees in the defense of the criminal charge, may be awarded those fees as damages in the civil action. *Tully v. Dasher*, 250 Md. 424, 442, 244 A.2d 207, 217 (1968); *but cf. Solko v. State Roads Comm'n*, 82 Md.App. 137, 153, 570 A.2d 373, 381, *cert. denied*, 320 Md. 222, 577 A.2d 50 (1990) (holding that attorney's fees are not "just compensation" in condemnation proceedings).

■■■ But exceptions are quite rare under Maryland common law to the general rule that counsel fees, incurred by the prevailing party in the very litigation in which that party prevailed, are not recoverable as compensatory damages against the losing party. The principal exception is for counsel fees incurred by an insured in successful litigation with a liability insurer which denied coverage or a duty to defend. *See Nolt v. United States Fidelity & Guar. Co.*, 329 Md. 52, 617 A.2d 578 (1993); *Bausch & Lomb Inc. v. Utica Mut. Ins. Co.*, 330 Md. 758, 790, 625 A.2d 1021, 1037 (1993); *Collier*, 327

Md. 1, 607 A.2d 537; *Continental Casualty Co. v. Board of Educ. of Charles County,* 302 Md. 516, 489 A.2d 536 (1985); *Bankers & Shippers Ins. Co. v. Electro Enters., Inc.,* 287 Md. 641, 415 A.2d 278 (1980); *Government Employees Ins. Co. v. Taylor,* 270 Md. 11, 310 A.2d 49 (1973). In *Collier* we called this exception under Maryland common law an "anomaly." 327 Md. at 17, 607 A.2d at 544.

Consequently, the issue before us is whether the "damages" referred to in Rule BE44 contain an additional exception to the American Rule by including counsel fees, either because Rule BE44 authorizes that award or because the award of counsel fees to the prevailing party is an inherent aspect of the common law of mandamus.

I

Hess seeks to structure an argument based on history. The interesting, although somewhat obscure, history of mandamus procedure is basically irrelevant to the issue before us. We point out that Hess does not cite any Maryland judicial precedent, from the founding of the colony to date, or any pre-American Revolution English judicial decision awarding counsel fees *as damages* in a mandamus case to a prevailing plaintiff.[3] In order to present Hess's argument and the disposition thereof by the Court of Special Appeals, we shall divide the historical background into four periods: (1) early common law (pre–1711), (2) 1711 to 1858, (3) 1858 to 1959, and (4) 1959 to date.

The early procedure in mandamus was described in *Ipes v. Board of Fire Comm'rs of Baltimore,* 224 Md. 180, 167 A.2d 337 (1961).

"At common law the pleading and practice in mandamus proceedings were very tedious and technical. Upon the filing of a petition which set forth sufficient facts, the court

---

**3.** Hess does not contend that Maryland mandamus incorporates the English practice that permits the taxing, *as costs,* against a losing party of some or all of the fee between solicitor and client on the prevailing side.

directed the writ to issue. This writ commanded the respondent to do the thing ordered, *or* to show cause, by a time certain, why he should not be required to do it. This was termed an alternative writ of mandamus; and, if the respondent wished to contest the matter, he either moved to quash the writ (for defects either of form or substance), or replied to it. This reply was called a 'return.' Upon the sufficiency of this return, the relator's right to the writ depended. In this return, the respondent was obliged to set forth with great care, certainty and precision the facts upon which he relied to defeat the petition, and on the case thus made the court decided the matter. The petitioner, or relator, was not allowed to traverse the facts stated in the return, and, if matters stated therein were not true, the only remedy of the petitioner was an action on the case for a false return; and then, after a verdict and judgment for him in such case, the application for the mandamus could be renewed, and the writ was generally issued."

*Id.* at 184, 167 A.2d at 339–40. *See also Harwood v. Marshall,* 10 Md. 451, 463–65 (1857); *Brosius v. Reuter,* 1 H. & J. 551, 557 (1805); 2 J. Poe, *Pleading and Practice in Courts of Common Law* § 711 (5th Tiffany ed. 1925).

Legislative modification of the ancient procedure began in 1711 with the statute of 9 Anne ch. 20, the application of which was limited to mandamus to try title to certain municipal offices. Alexander describes the procedural modification:

"The Statute provided that a return should be made to the first writ of *mandamus,* and . . . gave the power of traversing the return in the place of an action for a false return. The latter action, however, was not taken away, for the Statute only provides that in case damages are recovered by virtue of its provisions against the persons making the return, they shall not be liable to be sued therefor in any other action."

2 Alexander's British Statutes 695–96 (Coe's 2d ed. 1912). The provisions of 9 Anne ch. 20 were extended in England in

1831 to proceedings on other writs of mandamus by 1 William IV ch. 21.

In Maryland, statutory modernization of the procedure in mandamus was effected by Chapter 285 of the Acts of 1858. The 1858 enactment remained in effect, substantially unmodified, until it was repealed by Chapter 36 of the Acts of 1962, following the adoption by this Court of the last segment of the Special Proceedings Rules now found in Chapter 1100 of the Maryland Rules. We shall describe the 1858 enactment by its codified format in Md.Code (1957), Article 60.

An action for mandamus was initiated by verified petition. § 1. A show cause order was issued. § 2. The defendant filed an answer, that was required to be verified. § 3. Former § 5 provided:

> "The petitioner may plead to or traverse all and any of the material averments set forth in said answer and the defendant shall take issue or demur to said plea or traverse within five days thereafter; and such further proceedings shall thereupon be had in the premises for the determination thereof as if the petitioner had brought an action on the case for a false return."

If a factual issue were joined by the traverse to the answer, the issue was tried in the mandamus action. Either party could pray a jury trial. § 7. Section 7 further provided:

> "[I]n case a verdict shall be found for the petitioner ... such petitioner shall thereupon recover his damages and costs as he might have done in an action on the case for a false return ... and a peremptory writ of mandamus shall be granted thereupon without delay against the defendant."

The fourth historical period relevant to our review began with the adoption of the initial Special Proceedings Rules effective January 1, 1959. Between that date and January 1, 1962 the mandamus rule was Rule 1240. Former Rule 1240 became subtitle BE and present Rule BE44 is verbatim former Rule 1240e. The combination of the adoption of the BE Rules with the repeal of most of former Article 60 results

in Rule BE44 today addressing the subject matter previously addressed by former Article 60, § 7.[4]

Within the Rules Committee, work in preparation for the adoption of the first segment of Special Proceedings Rules was initially conducted in subcommittees. The first report of the Subcommittee on Mandamus, dated October 26, 1956, and on file in the Rules Committee office, briefly traced some of the procedural history. That report concluded:

"Accordingly, a large part of Article 60 (the purpose of which was to put mandamus on the same footing with other actions and eliminate the technicalities and delays of the common law) appears to be no longer necessary, since the same result can be achieved (with a few exceptions) by incorporating in the mandamus rule the provisions in Chapters 1–800 applicable to actions generally."

■ Against the foregoing background Hess's position seems to be that the Court of Special Appeals misconstrued the history. In our view, Hess has misconstrued the opinion by the Court of Special Appeals. In any event, Hess never informs us how it is benefitted by the historical analysis, none of which evidences that mandamus carried counsel fees for the prevailing party.

The Court of Special Appeals flatly and correctly held

"that the provisions of Md.Rule BE44 do not authorize the assessment of attorney's fees incurred by a successful party in a mandamus action as damages or costs in such an action merely on the basis that the party against whom the attorney's fees are sought is the unsuccessful litigant."

*Hess*, 102 Md.App. at 750, 651 A.2d at 453.

The Court of Special Appeals was unable to discern whether an action on a false return did or did not carry counsel fees.

---

4. The conferral in former Article 60, § 7 of a right on either party to pray a jury trial was continued. *See* Md.Code (1957, 1964 Repl.Vol.), Art. 60, § 7.

*Id.* Nor can we.[5] Given the obscurity of the point, the Court of Special Appeals assumed that, even if an action on a false return included the award of counsel fees to the successful litigant, the instant matter presented no allegation of a false answer to the complaint for mandamus. *Id.* Further, in the course of its analysis, the Court of Special Appeals had stated "an action on the case for a false return was available only to a party *who had not prevailed* because of the falseness of the return," and the court pointed out that Hess had prevailed. 102 Md.App. at 745, 651 A.2d at 450–51. Hess says that these comments fail to take cognizance of the changes in mandamus procedure.

■ In order to decide this case it is unnecessary to know what damages might or might not have been recoverable in an action for a false return at any point in Anglo–American legal history. That action was referred to in former Article 60, but those references were repealed in 1962. The successor Rules make no mention of the ancient action. Rule BE44 procedurally permits a plaintiff to seek in one action both mandamus relief and damages that may have been caused by the act or omission upon which relief in mandamus is predicated. Under the Maryland Rules the damage claim's validity will be governed by substantive law, unencumbered by any procedural vestiges of an action on a false return.

■ As a matter of substantive law under the American Rule, damages do not include counsel fees. The American

---

5. All of the Maryland authority, *supra,* that refers to an action on a false return does so without citing to a law report of any such action. Section 258 of F. Ferris, *The Law of Extraordinary Legal Remedies* (1926) is captioned, "Damages for False Return," but the section neither illustrates the damages recoverable nor refers to counsel fees. 3 W. Blackstone, *Commentaries on the Laws of England* at 111 (1768), refers to an action for a false return, but gives no citation to an illustrative case. T. Tapping, *The Law and Practice of the High Prerogative Writ of Mandamus, As It Obtains Both in England, and in Ireland* at *425–*432 (1853), discusses civil actions for false return, but does not mention counsel fees and gives no citation to a law report of a collateral civil action that awarded damages for a false return in the prior mandamus action.

Rule is so well established in Maryland that the mere mention of "damages" in BE44 cannot be construed to include an exception to the American Rule.[6]

 In a further effort to connect its mandamus claim with the award of counsel fees, Hess correctly points out that courts employ equitable principles in deciding mandamus actions. *See, e.g., Preissman v. Director of the Enoch Pratt Free Library,* 263 Md. 32, 282 A.2d 1 (1971); *Board of Educ. v. Montgomery County,* 237 Md. 191, 205 A.2d 202 (1964); *Ghingher v. Fanseen,* 166 Md. 519, 172 A. 75 (1934). Hess then notes that in *Konig v. Mayor & City Council of Baltimore,* 128 Md. 465, 97 A. 837 (1916), this Court "ordered that an equity court award attorney's fees to a party like Hess who successfully enjoined an unauthorized action of an agency with respect to the award of a competitive bid project." Brief of Petitioner at 19. Hess concludes that the circuit court was thereby authorized to award Hess its counsel fees.

Placing an "equity" label on Hess's circuit court action does not advance Hess's argument. The American Rule applies to actions which, prior to the 1984 procedural merger of law and equity, were considered to be actions "in equity," as well as to actions "at law." Further, *Konig* is distinguishable. It illustrates a special application of equity power, namely, the power to direct payment of counsel fees out of a fund that has been created by the efforts of counsel.

In *Konig* a taxpayer sued to invalidate a contract for labor and equipment let by Baltimore City in connection with the

---

6. An illustration of a *claim* for damages in mandamus is found in *Booze v. Humbird,* 27 Md. 1 (1867). Booze had sought mandamus to require the appellee to surrender to Booze the office of mayor of the City of Cumberland "and to yield up to [Booze] its emoluments, etc." *Id.* at 3. Booze lost in the circuit court and appealed, but died while the appeal was pending. *Id.* at 2. His personal representative sought to continue the appeal pursuant to a nonabatement statute. *Id.* This Court, however, held that under the law of that era the claim for emoluments was similar to a claim for personal injuries and that it abated on death prior to any judgment's having recognized the claim, with the result that the personal representative did not hold the claim as an asset of the estate. *Id.* at 5.

construction of a potable water filtration plant. Konig contended that the requirements of the City charter had not been followed. The trial court initially had dismissed the action, but this Court reversed and remanded in *Konig v. Mayor & City Council of Baltimore,* 126 Md. 606, 95 A. 478 (1915) (*Konig I* ). Having been advised at argument that the contract had been partly executed by the time of trial and that the contract might be fully executed by the time of decision in *Konig I,* this Court, in its remand in *Konig I,* said that "the extent to which relief by injunction may be granted, and the terms of the injunction, if any, that should be issued by the Court below must depend upon the status of the parties to the contract with reference to the performance thereof when the cause reaches that Court." *Id.* at 628, 95 A. at 485.

On remand the trial court issued an order declaring the contract void, but, after weighing the equities, refused to enjoin completion of the work. It found that any advantage to the taxpayers from an injunction was outweighed by the loss and damage that would be occasioned by delaying the completion of the project. The taxpayer plaintiff again appealed. *Konig v. Mayor & City Council of Baltimore,* 128 Md. 465, 97 A. 837 (1916) (*Konig II* ). There were majority and dissenting opinions in *Konig II.* Under neither opinion would the contractor have been required to repay the City the amounts already received for work done and materials provided. *Id.* at 502, 97 A. at 849 (dissenting opinion). The dissenters would have enjoined further payments and, in the event the work were not fully completed, would have enjoined further performance under the illegal contract. *Id.* at 503, 97 A. at 849–50.

The Court in *Konig II,* by a majority of 5–3, reversed and remanded, but essentially approved the balancing of the equities employed by the trial court. Because the Court understood the work to have been completed, no injunction was directed. Nevertheless, this Court said that

"[t]he lower Court shall ascertain how much of the contract price, to which the [contractor] would be entitled but for this proceeding, is still in the hands of the City. If it finds that it is sufficient the decree shall require the [City] to pay

out of such fund to the plaintiff the costs of this case, including the costs in this Court, and such fees for his solicitors, as the lower Court may allow—not to exceed, however, for said fees, the sum of $2,000.00. It shall authorize the City to pay over to the contractor the balance in hand, retained by reason of this proceeding. If it appears that the City has not retained sufficient money from the contractor to pay said costs and fees, then the decree shall require the [City] to pay them, not exceeding the amounts named above."

*Id.* at 481, 97 A. at 842–43.

The above-quoted passage from *Konig II* is not a general authorization for courts, sitting in cases in which equitable principles might be applied, to award counsel fees to the prevailing party. The taxpayer in *Konig* had created a fund for the benefit of all of the taxpayers of the jurisdiction, namely, any appropriated amount in the hands of the City that had not yet been paid to the contractor under the invalid contract. To the extent that there was a fund, and as part of the balancing of equities, reasonable counsel fees of the taxpayer plaintiff were to be paid from the fund.

■ The common fund theory has been applied or recognized where all of the holders of mortgage debentures were benefitted by the sale of the security, ordered over the objection of receivers for the debtor corporation, *Terminal Freezing & Heating Co. v. Whitelock*, 120 Md. 408, 87 A. 820 (1913); where a stockholder's derivative action benefitted all of the shareholders, *Davis v. Gemmell*, 73 Md. 530, 21 A. 712 (1891); where all of the taxpayers of a municipality were benefitted by a taxpayer's action resulting in reimbursement to the municipality of unauthorized disbursements, *Bowling v. Brown*, 57 Md.App. 248, 469 A.2d 896 (1984); and where a successful taxpayer's action benefitted all taxpayers of a "special tax district." *Smith v. Edwards*, 46 Md.App. 452, 418 A.2d 1227

(1980), *rev'd. on other grounds*, 292 Md. 60, 437 A.2d 221 (1981).[7]

In the instant matter Hess's legal action did not produce a fund benefitting all of the taxpayers of Prince George's County.

## II

Hess also argues from authority, noting that in some states the term "damages" in a mandamus statute is interpreted to include attorney's fees. *See Barten v. Turkey Creek Watershed Joint Dist. No. 32*, 200 Kan. 489, 438 P.2d 732 (1968); *see also Missouri Pac. Ry. Co. v. Larabee*, 234 U.S. 459, 34 S.Ct. 979, 58 L.Ed. 1398 (1914) (Kansas statute, as interpreted, does not violate the fourteenth amendment); *State ex rel. Shea v. Cocking*, 66 Mont. 169, 213 P. 594 (1923); *Colorado Dev. Co. v. Creer*, 96 Utah 1, 80 P.2d 914 (1938).[8]

---

**7.** Hess also reads more into *Inlet Assocs. v. Assateague House Condominium Ass'n*, 313 Md. 413, 545 A.2d 1296 (1988), than the opinion holds. In that case plaintiffs, suing as taxpayers, successfully set aside a transfer to a developer by a municipality of the bed of a paper, public street. *Id.* The taxpayers sought counsel fees, and the municipality argued that there was no fund. *Id.* at 444, 545 A.2d at 1311–12. The trial court had denied counsel fees in the belief that the plaintiffs were acting in furtherance of their individual interest and were not primarily motivated by the desire to preserve municipal property. *Id.*, 545 A.2d at 1312.

Even if a fund is created for the benefit of a class by the efforts of a plaintiff, a court is not compelled, by that fact alone, to make an award of counsel fees in an equity action. In *Inlet Assocs.* the trial court exercised its discretion against an award of fees, and this Court in effect concluded that the exercise of discretion was not abused. Thus, it was unnecessary for this Court to decide whether the value of the bed of the street was a "fund."

**8.** Hess also relies on *State ex rel. Pac. Bridge Co. v. Washington Toll Bridge Authority*, 8 Wash.2d 337, 112 P.2d 135 (1941). Counsel fees were awarded in that case, but not based on an interpretation of the term, "damages," in the mandamus statute. The court awarded "only the statutory attorney's fee." *Id.* at 345, 112 P.2d at 138. In the State of Washington, the Civil Procedure Code provides that statutory attorney's fees are a part of taxable court costs. Wash.Rev.Code Ann. § 4.84.010 ¶ 6 (1988, 1995 Cum.Supp.). Currently the amount is $125 in all actions where judgment is rendered. Wash.Rev.Code Ann. § 4.84.080 (1988, 1995 Cum.Supp.).

The cases relied on by Hess present the minority view. For cases applying the American Rule to an action in mandamus, see *Commodore Mining Co. v. People ex rel. Reynolds*, 82 Colo. 77, 257 P. 259 (1927); *Wayne Township Bd. of Auditors DuPage County v. Vogel*, 68 Ill.App.3d 714, 24 Ill.Dec. 887, 386 N.E.2d 91 (1979); *Indiana Alcoholic Beverage Comm'n v. State ex rel. Harmon*, 269 Ind. 48, 379 N.E.2d 140 (1978); *Perry County Council v. State ex rel. Baertich*, 157 Ind.App. 586, 301 N.E.2d 219 (1973); *Fownes v. Hubbard Broadcasting, Inc.*, 310 Minn. 540, 246 N.W.2d 700 (1976); *Yates v. Durk*, 464 S.W.2d 43 (Mo.App.1971); *State ex rel. Roberson v. Board of Educ. of Santa Fe*, 70 N.M. 261, 266–68, 372 P.2d 832, 836–37 (1962); *People ex rel. Lally v. New York Cent. & H. R.R. Co.*, 116 A.D. 849, 102 N.Y.S. 385, *appeal dismissed*, 190 N.Y. 519, 83 N.E. 1129 (1907); *People ex rel. Rodler v. Deutscher Krieger Bund of New York*, 129 A.D. 80, 113 N.Y.S. 367, *aff'd*, 195 N.Y. 529, 88 N.E. 1128 (1908); *State ex rel. Murphy v. Industrial Comm'n of Ohio*, 61 Ohio St.2d 312, 15 O.O.3d 386, 401 N.E.2d 923 (1980); *Roberts v. City of Bethany*, 668 P.2d 350 (Okla.App.1977), *modified*, 668 P.2d 332 (Okla.1979); *Hillcrest Terrace Corp. v. Rapid City*, 71 S.D. 291, 23 N.W.2d 793 (1946); *Calmenson Clothing Co. v. Kruger*, 66 S.D. 224, 281 N.W. 203 (1938); *Davis v. Peters*, 224 S.W.2d 490 (Tex.Civ. App.1949); *State ex rel. Thompson v. Board of School Directors of Milwaukee*, 179 Wis. 284, 191 N.W. 746 (1923).

That the majority of courts do not consider counsel fees to be within the term, "damages," in a mandamus statute reinforces our conclusion in Part I, *supra*, that "damages" in Rule BE44, standing alone, does not authorize the award of counsel fees.

### III

Hess, supported by an amicus brief on behalf of the Associated Builders and Contractors of Metropolitan Washington, D.C., submits that it would be sound public policy for this Court to construe Rule BE44 to authorize awarding counsel fees. The submission is that the goals of competitive bidding are defeated if a public body, after the bids are opened and

announced, is permitted to reject all bids and to call for rebidding after the low bid is known. Hess and the amicus assert that awarding counsel fees in mandamus would discourage this practice. For this Court to attempt to evaluate the extent of the alleged practice and the relative benefits and burdens of the proposed remedy would require speculation. The type of public policy argument advocated here is best decided by a legislative body which, through its committees, can take testimony as an aid in exercising a factually informed judgment.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY THE PETITIONER.*