ROBERT G. SMITH ET AL. *v.* THELMA T.
EDWARDS ET AL.

[No. 110, September Term, 1980.]

*Decided November 30, 1981.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*Edward L. Genn,* with whom was *Gilbert J. Genn* on the brief, for appellants Friendship Heights and the Friendship Heights Village Council and by *Albert D. Brault,* with whom were *Daniel L. Shea* and *Brault, Graham, Scott & Brault* on the brief, for Smith, Murphy, Shlefstein, Hendley, DeRocco, Tauben and Tavani, other appellants.

*James L. Thompson,* with whom were *Miller, Miller & Canby* on the brief, for appellees.

DAVIDSON, J., delivered the opinion of the Court.

Friendship Heights Citizens' Committee (Committee) [1] is an elected body which administers a special tax district,[2] located in Montgomery County, composed of the villages of Friendship Heights and The Hills. This case concerns the powers of the Committee under §§ 66-1 through 66-12 of the Montgomery County Code (1972 & 1974 Cum.Supp.). The question presented is whether the Committee had the implied power to engage in administrative and judicial proceedings in an effort to oppose intensification of development in Friendship Heights and The Hills. More particularly, the question presented is whether the Committee expended pub-

---

**1.** Ch. 779, 1975 Laws of Md., effective 1 July 1975, changed the name of Friendship Heights Citizens' Committee to Friendship Heights Village Council.

**2.** This special tax district was created by Ch. 131, 1914 Laws of Md., which as amended, now appears in Montgomery County Code (1972, 1977 Repl.Vol. & 1980 Cum.Supp.), §§ 66-1 through 66-12. The question of the impact, if any, of articles XI-A and XI-E of the Maryland Constitution on the legal status of this special tax district was not raised or decided below and, therefore, is not considered here. Md. Rule 885.

lic funds for purposes beyond the scope of its authority and, therefore, its individual members should be held personally liable.

In 1973, individual petitioners, Robert G. Smith, Irene L. Murphy, Howard M. Shlefstein, Barbara A. Hendley, Andrew G. DeRocco, Barbara G. Tauben, and Cleonice Tavani were elected as members of the Committee. In 1973, the Committee authorized the expenditure of $1,200 for attorney's fees for representation in pending litigation for the purpose of challenging the issuance of a building permit for the development of a 353 unit high-rise condominium within Friendship Heights for which allegedly there was inadequate sewer capacity. In 1974, the Committee authorized the expenditure of $3,336.67 for attorney's fees for representation in administrative and judicial proceedings for the purpose of opposing the construction of a two-level retail store and office complex in Friendship Heights that required an exemption from a sewer moratorium then in effect. In 1974, the Committee authorized the expenditure of $4,425.00 for attorney's fees for representation in judicial proceedings for the purpose of supporting the Montgomery County Council's (Council) down-zoning (less intensive development) of various properties in Friendship Heights. In addition, the Committee authorized the expenditure of $8,000.00 for a study utilized to support those down-zonings.

On 11 December 1974, in the Circuit Court for Montgomery County, respondents, Thelma T. Edwards, Vivian G. Carter, and Lawrence Myers (taxpayers), filed a bill of complaint. The bill of complaint, as amended, alleged that individual petitioners as members of the Committee

"authorized and expended, and have budgeted to expend, sums for legal fees . . . not authorized by Chapter 66 . . . [to]:

a. Intervene in zoning proceedings;

b. Participate in sewer proceedings; and

c. Bring suits in the name of the Friendship Heights Citizens' Committee."

The amended bill also alleged that the individual petitioners had expended unauthorized sums to conduct development studies. The amended bill sought injunctive relief, an accounting of funds, a judgment against the individuals in the amount of the unauthorized funds expended, and reasonable attorney's fees.

The trial court granted a motion to intervene filed by Friendship Heights and The Hills. Hearings were held on 6 March 1978 and 21 September 1978.

In a memorandum opinion, the trial court held that the Committee had "acted in an *ultra vires* manner in the four specific instances" involving "the budgeting and expenditure of tax monies in connection with litigation in which the Citizens Committee chose to get involved," and that the "individual defendants did illegally authorize expenditures of public funds totalling $16,961.67." On 29 October 1979, the trial court entered a decree awarding $16,961.67 jointly and severally against the defendants, $15,000 in attorney's fees, and enjoining defendants "from budgeting, appropriating or expending any further sums, including legal expenses, for any of the four activities. . . ."

The Court of Special Appeals affirmed the judgment of the trial court. *Smith v. Edwards,* 46 Md. App. 452, 418 A.2d 1227 (1980). Petitioners filed a petition for a writ of certiorari that we granted. We shall reverse the judgment of the Court of Special Appeals.

The relevant provisions, then applicable, of §§ 66-1 through 66-12, expressly delineating the powers and responsibilities of the Committee were as follows:

Section 66-2 provided in pertinent part:

"The county council for Montgomery County is hereby authorized, empowered and directed to levy and cause to be collected from the property owners at the time of the county tax levy . . . within the said villages known as 'Friendship Heights' and 'The Hills' . . . ten cents on each one hundred dollars of the assessable value of the real and personal prop-

erty in said villages ... to be paid over by said county council to the treasurer of the committee ... and said county council shall also order and have paid over to said treasurer the proportion of the county road tax to be levied and collected in the same manner as though the said villages of 'Friendship Heights' and 'The Hills' were an incorporated town, and said villages shall, for the purpose, be considered by said county council as an incorporated town of said county; *all of said funds to be used directly by or through said committee, exclusively for opening, improving, widening, maintaining, repairing and lighting the streets, roads, lanes, alleys, sidewalks, parking, drainage, sewerage, sanitation and other village improvements, and for furnishing police and fire protection, clerical and other public service, including the removal of ashes, garbage and other refuse and the disposal thereof.*" [3] (Emphasis added.)

Section 66-3 provided in pertinent part:

"*If the majority of the said* 'Friendship Heights Citizens' *Committee' decide the sum* hereinbefore authorized to be *taxed and levied is an insufficient amount* for the ensuing year ... *the said committee,* or resident taxpayers ... *may ... petition in writing the county council of Montgomery County to make an additional special levy and tax* of not more than thirty cents on each one hundred dollars of the assessable value of said real and personal property in said villages ... but in no case shall said additional special levy be greater than thirty cents on each one hundred dollars of the assessable value of real and

---

**3.** Ch. 661, 1977 Laws of Md., effective 1 July 1977, inapplicable here, amended § 66-2 to authorize the Committee to expend public funds not only for the purposes previously delineated, but also "for carrying out any other general police and health power function pursuant to this chapter." We do not here consider the constitutionality of this enactment. *See* n.2 above.

personal property, as aforesaid, in any one year." (Emphasis added.)

Section 66-4 provided in pertinent part:

"[The members of the Committee] each . . . shall qualify . . . by taking an oath . . . to diligently and faithfully discharge the duties of the office."

Section 66-6 provided in pertinent part:

"*Said 'Friendship Heights Citizens' Committee'* . . . in connection with any one undertaking . . . *may purchase such material or make contract for such work,* or for such work done by employed labor, or otherwise, *as it may deem best.*" (Emphasis added.)

Section 66-7 provided:

"*The said county council may, upon recommendation of the 'Friendship Heights Citizens' Committee' adopt such regulations with respect to* dumping of garbage, sanitation, *erection of buildings,* care of property or other police or health regulations, and provide penalties for the violation thereof, as said council may deem proper, which regulations may be enforced by or through said committee." (Emphasis added.)

Section 66-9 provided in pertinent part:

"(a) *The 'Friendship Heights Citizens' Committee' is empowered* to grade, pave, macadamize or otherwise improve any existing dedicated street, road or lane, or any county road, street or lane, within the said special taxing area which has been or which may hereafter be acquired and opened for public use and to lay sidewalks and curbs thereon, and, subject to the approval of the county council of Montgomery County and after due publication of cost thereof, *to assess the cost of said grading,* paving, macadamizing, laying sidewalks and curbs, or otherwise improving, *against the property abutting on that portion of the said street,* road, lane or sidewalks so improved, in proportion to the

frontage of said abutting property on the same; provided, the consent to the proposed improvements of the owners of two-thirds of said abutting property to be first had and obtained. . . . All taxes assessed as provided in this section shall be paid over by the treasurer of said county to the treasurer of the 'Friendship Heights Citizens' Committee,' who shall devote such funds to the exclusive purpose of paying for special improvements herein provided for or any indebtedness which may be incurred therefor." (Emphasis added.)

Section 66-11 provided:

"For the purpose of making improvements, provided for in the aforegoing sections or for the purpose of making improvements other than maintenance, *the said citizens' committee is hereby authorized and empowered to borrow money and otherwise contract indebtedness and obligate the said taxable area* in amounts not exceeding in total at any time ten percent of the assessed valuation of real property within the said taxable area, and for these purposes said taxable area shall be and is hereby constituted a corporation, and said citizens' committee is authorized to act for said corporation." (Emphasis added.)

On two previous occasions, this Court considered the extent of the Committee's powers. In *Friendship Heights and The Hills v. Funger,* 265 Md. 339, 289 A.2d 329 (1972), the owner of an 18-acre tract of land entered into agreements with Somerset and Chevy Chase in which they agreed to support and not oppose the owner's application for R-CBD zoning (multiple-family, central business district residential) in return for concessions made by the owner that would benefit these communities by limiting vehicular ingress and egress from the tract. Friendship Heights concluded that its interests were being jeopardized by these agreements because they would result in traffic being routed onto the streets of Friendship Heights. In an action for

declaratory and injunctive relief, the Committee sought to have these agreements declared invalid and to enjoin the Council from adopting any zoning map or text amendment based in whole or in part upon these agreements.

This Court, focusing on §§ 66-2 and 66-9 as delineating the Committee's express powers, held that it lacked the capacity to bring the action. In reaching this conclusion, this Court said:

> "*While the Committee is empowered to make certain public improvements, nowhere is it expressly given the power to sue and be sued.* It is not vested with any planning or zoning function nor are regulatory powers conferred upon it. It is a special tax district, specifically excluded by Art. 23A, § 9 (a) from the definition of a municipal corporation, which has an unlimited power to sue and be sued only because it is expressly so empowered by Art. 23A, § 1. *We are not to be understood, however, as passing on the question whether the Committee has the power to sue for the breach of a contract to construct a road, which might be implied from the express power which was granted it,* or whether it could sue or be sued under Code (1957, 1966 Repl. Vol.) Art. 23, § 138 in an action affecting the tax moneys paid to it." *Funger,* 265 Md. at 342-43, 289 A.2d at 331 (emphasis added) (citations omitted).

The Court additionally held that the Committee had failed to exhaust an administrative remedy. In reaching this result, the Court stated:

> "It is not alleged that the agreements under attack or that the master plan or zoning text amendment which might allow the zoning reclassification have been implemented by a zoning map amendment, or that Funger's application for a reclassification has been approved by the County Council. *If and when an application is considered, Friendship Heights and its residents will have*

> *ample opportunity to be heard,* as provided by
> § 70-90 of the Montgomery County Code (1965, as
> amended by Ch. 177 of the Laws of 1967). In the
> interim, their position does not rise above that of
> apprehension, and apprehension is not ordinarily
> the stuff of which declaratory or injunctive relief is
> made in zoning matters, where the question may
> never arise if statutory remedies are followed."
> *Funger,* 265 Md. at 343, 289 A.2d at 331 (emphasis
> added).

Thus, this Court held that under the circumstances presented in *Funger,* the Committee lacked the express power to sue for declaratory and injunctive relief. However, because the Committee had failed to exhaust its administrative remedy, this Court did not consider whether under those circumstances the Committee had the implied power to sue. Indeed, this Court made it clear that under other circumstances questions concerning the Committee's implied powers remained open. The Court's comment that the Committee would have the opportunity to be heard in an administrative zoning proceeding strongly suggests that the Committee might have the implied power to appear and participate in an administrative zoning proceeding and in a related judicial proceeding on appeal. Md. Code (1957, 1978 Repl.Vol.), Art. 66D, § 8-105. Manifestly, *Funger* did not foreclose the question whether the Committee had the implied power to engage in such administrative and judicial proceedings.

In *Barlow v. Friendship Heights Citizens' Committee,* 276 Md. 89, 344 A.2d 415 (1975), the Committee brought two actions, one against the individual members of the predecessor Committee, and another against a bank. The Committee alleged that the individual members had conspired with each other and with officers of the bank to defraud the community and to breach their fiduciary duties by purchasing, at prices alleged to be excessive, property owned by members of the Committee and by prepaying a portion of a $1,250,000 loan through redemption of a $300,000 certificate of deposit which bore a higher interest rate than the loan.

This Court held that under the circumstances there present, the Committee had the implied power to sue. In reaching this result, the Court, recognizing that the Committee was not a municipal corporation, categorized it as a quasi-municipal corporation and applied the *Dillon* rule. That rule states:

> "It is a general and undisputed proposition of law that *a municipal corporation possesses and can exercise the following powers and no others:*
>
> "First: Those granted in *express words;* second, those *necessarily or fairly implied* in or *incident* to the powers expressly granted; third, those *essential* to the declared objects and purposes of the corporation — not simply convenient, but indispensible." 1 J. Dillon, Municipal Corporations § 89 at 145 (4th ed. 1890) (emphasis in original).

In determining that under the circumstances the Committee had the implied power to sue, the Court, initially focusing on § 66-2 and § 66-9 as delineating the Committee's express powers, said:

> "The threshold question in this case is whether the power of the present Committee to bring suit against the individuals who constituted its predecessor in office or against Suburban can be implied from any of the powers expressly granted. We think that it cannot because of the narrow scope of those powers." *Barlow,* 276 Md. at 94, 344 A.2d at 418.

The Court, however, did not confine itself to a consideration of the express powers provided in § 66-2 and § 66-9. It said:

> "But this does not necessarily end the matter. Montgomery County Code (1972) § 66-4 prescribes that members of the Committee upon election must take an oath 'to diligently and faithfully discharge the duties of the office.' From this can be implied a power to seek redress on behalf of the special tax area if it is believed that tax monies have been

> diverted to the benefit of individual members of the Committee or have been improperly expended with the concurrence of Suburban for illegal or ultra vires purposes. Even under the *Dillon* rule it has long been recognized that such powers as are necessary in the performance of a duty imposed or the accomplishment of a stated purpose may properly be implied." *Barlow,* 276 Md. at 94-95, 344 A.2d at 418.

Thus the Court looked to the entire statutory scheme, including the additional responsibilities embodied in § 66-4, that requires members to take an oath "to diligently and faithfully discharge the duties of the office."

In so doing, the Court applied the traditional principle that a consideration of an entire statutory scheme is appropriate in construing a statutory grant of powers. As stated in 2 McQuillin, Municipal Corporations § 9.22 at 685 (3d ed.rev. 1979):

> "The plan of the municipal government, it has been said, is to be ascertained from all the provisions of the charter.[4] *In arriving at the intention of the framers of the charter the whole and every part of the instrument or enactment must be taken and compared together.* In other words, effect should be given, if possible, to every section, paragraph, sentence, clause and word in the instrument and related laws." (Emphasis added) (footnotes omitted).

Applying this principle to the instant case produces a clear result.

An examination of the entire statutory scheme embodied in § 66-1 through § 66-12 establishes that under the terms of the statute the Committee has express powers far more extensive than those delineated in § 66-2 and § 66-9. The

---

4. The term "charter" used in § 9.22 is defined by McQuillin as including "all powers, from whatever source derived, possessed by the municipal corporation." McQuillin, § 9.22 at 684.

statute empowers the Committee to provide and maintain public improvements, including streets, sidewalks, parking, drainage, sanitation, and "other village improvements," as well as the power to provide and maintain public services including police and fire protection, clerical services, and garbage disposal services. § 66-2. In addition, the statute empowers the Committee to effectuate its responsibilities by contracting for materials and labor necessary to provide these public improvements and services. § 66-6. The statute gives the Committee a variety of powers related to raising the funds necessary for the provision of these public improvements and services. While the Council is given the ultimate responsibility of levying and collecting a property tax limited to a statutorily mandated amount, § 66-2, the Committee is given the responsibility of determining whether that amount is sufficient. In the event that it determines the amount to be insufficient, the Committee is given the responsibility of petitioning the Council to make an additional levy not to exceed a statutorily mandated amount. § 66-3. In addition, the Committee is empowered to assess the cost of certain improvements against abutting properties subject to the approval of the Council and two-thirds of the abutting property owners. § 66-9. Most important, the Committee is empowered to borrow money and obligate the special tax district in an amount not to exceed 10 percent of the assessed value of real property within the district in order to provide public improvements. § 66-11. Finally, the Committee is given limited policy-making responsibilities in that it may recommend the adoption of regulations to the Council "with respect to dumping of garbage, sanitation, erection of buildings, care of property or other police or health regulations." § 66-7. Thus, an examination of the entire statutory scheme embodied in § 66-1 through § 66-12 establishes that the statute gives the Committee a variety of substantial express powers and responsibilities relating to the provision of public improvements and services for Friendship Heights and The Hills.

Here the record shows that the Committee authorized the expenditure of funds for legal representation in various

administrative and judicial proceedings as well as for a study used in one of those proceedings. In one instance, the Committee challenged the issuance of a building permit for the development of a 353 unit high-rise condominium for which there was allegedly inadequate sewer capacity. In another instance, it opposed the construction of a two-level store and office complex that required an exemption from a sewer moratorium. In a third instance, it supported the Council's down-zoning of various properties.

We recognize that the Committee is not empowered to determine the adequacy of sewer capacity, or the appropriateness of an exemption from a sewer moratorium. In addition, it is given no planning, zoning or regulatory powers. However, in each of the instances here, the Committee was not attempting to exercise any of these powers. Rather, whether challenging the issuance of a building permit on the grounds of inadequate sewer capacity, opposing the grant of an exemption from a sewer moratorium, or supporting the grant of a down-zoning map amendment, the Committee was primarily engaged in an effort to prevent an intensification of development.

The inevitable concomitant of an intensification of development is an increased demand for public improvements, maintenance and services that necessarily directly impacts upon the storm drainage system, the construction and maintenance of streets and sidewalks, parking, police and fire protection, and other governmental services, all paid for by tax moneys. It is conceivable, for example, that if development were sufficiently intensified, it might become virtually impossible to provide and maintain the requisite public improvements and services from the limited public funds available. Thus, intensification of development necessarily directly affects the Committee's ability to carry out its statutorily imposed obligations.

Under these circumstances, the power to engage in administrative and judicial proceedings in an effort to prevent an intensification of development is necessary and proper to give effect to the powers expressly granted to the Committee.

Under the *Dillon* rule, "such powers as are necessary in the performance of a duty imposed or the accomplishment of a stated purpose may properly be implied." *Barlow,* 276 Md. at 95, 344 A.2d at 418. Accordingly, we now hold that under the circumstances of this case, the Committee had the implied power to engage in administrative and judicial proceedings to oppose intensification of development in Friendship Heights and The Hills. The Committee acted within the scope of its authority and, therefore, the individual members should not be held personally liable. § 66-8.[5]

> *Judgment of the Court of Special Appeals reversed.*
> *Case remanded to that court with instructions to remand to the Circuit Court for Montgomery County for the entry of a judgment in accordance with this opinion.*
>
> *Costs to be paid by respondents.*

---

5. § 66-8 provides:

"Said members of said 'Friendship Heights Citizens' Committee' for the purpose of making contracts or otherwise incurring liabilities in the performance of the duties provided by this chapter, shall be considered in law as a corporation, and are not to be held individually or personally liable in connection therewith."

In light of this decision, we need not consider petitioners' remaining contentions, including the contention that the members of the Committee cannot be held personally liable even if the Committee acted beyond the scope of its authority because its members acted in good faith.