469 A.2d 896

**Victor B. BOWLING, Jr., et al.**

v.

**Terence R. BROWN.**

**No. 409, Sept. Term, 1983.**

Court of Special Appeals of Maryland.

Jan. 11, 1984.

250

William B. Ellinger, La Plata, with whom were Mitchell & Ellinger, P.A., La Plata, on brief, for appellants.

Christopher C. Henderson, La Plata, with whom was Edward S. Digges, La Plata, on brief, for appellee.

Argued before LOWE, LISS and BISHOP, JJ.

BISHOP, Judge.

This appeal involves an action filed by a taxpayer of the Town of La Plata against two of the three members of the Town Council. The taxpayer's action was a successful attempt to have the two councilmen personally reimburse the town $4,598.07 which had been paid as reimbursement to the Town Manager and the Town Engineer for their criminal defense attorney's fees.

Victor B. Bowling, Jr., and Jack Davis, appellants, are the Mayor and a City Councilman, respectively, of the Town of La Plata, located in Charles County. The Council of the

Town of La Plata is composed of the Mayor and two elected councilmen. Terrence R. Brown, appellee, and cross-appellant, is resident, property owner and taxpayer of the Town of La Plata. John D. Newman, Jr., is the Town Manager and Joseph Ward is the Town Engineer. When the events in this case occurred, Newman and Ward were stockholders of Facility Services, Inc.; Newman was also an officer of that corporation. Lindy Foster was a paid employee of the Town of La Plata.

Brown filed an action in the Circuit Court for Charles County against Mayor Bowling and Councilman Davis, seeking a declaratory judgment that Bowling and Davis had acted beyond the powers granted to them under the Town Charter when they approved by a two to one vote (Councilman Gyorda voting in the negative) Town Resolution 80–5, as a result of which public monies of the Town of La Plata were paid for Newman's and Ward's counsel fees. Brown further sought a money judgment in favor of the Town against Bowling and Davis, jointly and severally, in the amount of the expenditures along with reasonable attorney's fees to be awarded from the fund created by the judgment. After a court trial (Bowling, J.) judgment was entered in favor of Brown and the Town against both appellants in the amount of $4,598.07.

Appellants ask whether the trial court erred in making the following rulings:

I. That the payment of the funds under Resolution 80–5 was not for a public purpose;

II. That Article 23A, section 1B(a) does not apply;

III. That the individual Town Council members do not have qualified immunity for discretionary acts performed without malice; and

IV. That the "good faith" standard does not apply and the appellants did not exercise due care. Brown, in his cross-appeal, asks whether the Circuit Court erred in failing to award him attorney's fees where his suit has resulted in the creation of a fund for the benefit of all the taxpayers.

## The Facts

We adopt the facts as set out in the opinion of the trial court:

"On May 13, 1980, John D. Newman, Jr., and Joseph Ward were charged with corrupt misuse of their respective public offices as Town Manager and Town Engineer by converting for their personal use and benefit as officers and stockholders of Facility Services, Inc., a private corporation, the services of Lindy Foster, an employee of the Town of La Plata, for which services she was compensated by the Town of La Plata. The charges also included a count premised upon each criminal defendant's alleged disregard of his official duties by permitting Lindy Foster's services to be converted for the use of Facility Services, Inc., with a consequential perversion of each criminal defendant's trust as a municipal employee.

\* \* \* \* \* \*

The charges were made by criminal information prepared and filed by the State's Attorney for Charles County. Prior to the information being prepared and filed, the matters which were the subject of the criminal informations were presented to the Grand Jury of Charles County, and a criminal presentment was returned by the Grand Jury, which formed the basis for the criminal information drafted and filed by the State's Attorney for Charles County. Each of the defendants retained counsel, and after a Motion to Dismiss was filed on behalf of Joseph Ward, the information was dismissed by a nolle prosequi by the State's Attorney for reason that a prior decision of the Court of Appeals ruled that a town engineer was not an official of the town and therefore, could not be charged under the Statute which formed the basis of the charges against him. Thereafter, the State's Attorney concluded that he was unable to pursue the charges against John D. Newman, Jr., beyond a reasonable doubt and dismissed the criminal information filed against him by a nolle prosequi.

John D. Newman, Jr., and Joseph Ward discussed with the Defendant Bowling the possibility of reimbursement to them of counsel fees which they had paid. No demand for said fees, however, had been made by either employee. The Defendants testified at trial that the Grand Jury had probable cause for the issuance of the presentment against both employees. The Defendants discussed the possibility of the Town reimbursing the employees for legal expenses incurred, and on one occasion the Defendant, Jack Davis, stated to the Defendant, Victor B. Bowling, Jr., that he would only approve such a payment if counsel advised that it was permissible. No testimony was given as to precisely what information was given to the Town attorney, but Resolution 80–5 adopted on October 14, 1980 by the Town Council by a two-to-one vote, (the Defendants having voted in favor of the Resolution), recited that:

WHEREAS, criminal charges were brought against Mr. Newman and Mr. Ward by the State's Attorney, Charles County, Maryland, charging Mr. Newman and Mr. Ward with malfeasance and non-feasance, and

WHEREAS, the State's Attorney for Charles County, Maryland, has thoroughly investigated all allegations made against Town employees and dismissed all charges against Town Employees, and

WHEREAS, members of the Town Council have investigated the allegations made against Town Employees and have found no factual basis for these allegations, and

WHEREAS, these criminal charges brought by the State's Attorney for Charles County, Maryland against Mr. Ward and Mr. Newman were directly related and involved their duties as employees of the Town of La Plata, and

WHEREAS, there is legal precedent for reimbursing town officials for legal services and expenses as indicated below:

1. *City of Moorhead v. Murphy,* [94 Minn. 123] 102 N.W. 219, states 'In the absence of prohibitive charter

provisions a municipality has the power to reimburse police officer for attorney fees and expenses incurred in the defense of an action for false imprisonment.

2. *Marian Cobb, et al v. City of Cape May,* [113 N.J.Super. 598] 274 Atl.2nd 622, held that a 'Public official is entitled to compensation incurred in the performance of his official duties. The right of a municipality to provide for defense of mayor or other officials if (sic) municipality in suit is not circumscribed by whether he acts precisely within his statutory authority.'

RESOLVED by the Town Council of La Plata that Mr. Ward and Mr. Newman be reimbursed for all legal fees incurred as a result of the charges brought against them by the State's Attorney for Charles County, Maryland. (Plaintiff's Exhibit No. 6.)

The Resolution was signed by each of the Defendants and it showed that the third Council member, John G. Gyorda, voted 'nay'. It is agreed by all parties that the use of Lindy Foster's services for Facility Services, Inc., as alleged in the criminal informations, was not within the scope of the authority and/or employment of either John D. Newman, Jr., or Joseph Ward. As a result of this Resolution, $3,076.57 from public funds was paid as reimbursement for the criminal defense of John D. Newman, Jr., and $1,521.50 was paid from public funds for reimbursement for criminal defense of Joseph Ward."

\* \* \* \* \* \*

Under Section 19(24) of the Town Charter the Town Council is authorized:

"[t]o levy, assess, and collect valorem property taxes; to expend municipal funds for any public purpose; to have general management and control of the finances of the Town."

There is provision under the "Saving Clause," subsection 58 of Section 19 that "the enumeration of powers in this section is not to be construed as limiting the powers of the

Town to the several subjects mentioned." Appellant argues that the trial court erred in finding that the expenditure of the funds pursuant to Resolution 80–5 was not for a public purpose because the court made this determination solely on "the fact that the criminal information . . . was not for the benefit of the Town of La Plata." They asseverate that the court failed to consider "the public benefits derived from assisting the Town in recruiting and retaining qualified officials and to maintain morale. Appellants claim that since the basis for the criminal charges were the allegations that had been previously made by Councilman Gyorda and since Councilman Gyorda's investigation was having an adverse effect on Town employees and disrupting Council activities, it was necessary to pass Resolution 80–4, a resolution which closed the investigation of the allegations against the Town employees. As we follow it, appellants' argument proceeds that since the investigation and allegations against them were founded in what appeared to be a political controversy that caused negative effects on the Town employees and the function of the Town Council, and since Resolutions 80–4 and 80–5 were passed to alleviate those conditions, they were passed for a public purpose. In *Snowden v. Anne Arundel County,* 295 Md. 429, 434, 456 A.2d 380 (1983) the Court stated:

"Giving content to the 'public purpose' requirement has not been a simple task. As we said in *Finan v. M. & C.C. of Cumberland,* 154 Md. 563, 565, 141 A. 269 (1928), and more recently in *Horace Mann League v. Board,* 242 Md. 645, 685, 220 A.2d 51, *cert. denied,* 385 U.S. 97, 87 S.Ct. 317, 17 L.Ed.2d 195 (1966): 'What is a public purpose for which public funds may be expended is not a matter of exact definition; it is almost entirely a matter of general acceptation.' "

■ There is no prohibition against the payment of public funds to private persons or institutions so long as there is a public purpose being served. *Id.* at 435, 456 A.2d 380. Appellee refers us to a string of cases, each of which held that the payment or reimbursement of legal expenses on

behalf of government employees serves no public purpose where the employee's legal problems arise out of activities that did not involve the discharge of their public duties. *Board of Chosen Freeholders v. Conda,* 164 N.J.Super. 386, 396 A.2d 613 (1978) (public employee used for personal business during government business day); *Township of Manalapan v. Loeb,* 126 N.J.Super. 277, 314 A.2d 81 (1974) (misuse of Town credit card); *Powers v. Union City Board of Education,* 124 N.J.Super. 590, 308 A.2d 71 (1973) (extortion from government supplier). On the other hand in *Snowden* the Court pointed out:

"Since a municipality may be civilly liable for the criminal action of its officials, reimbursement of the legal expenses incurred by such officials following a successful defense serves to protect the municipal corporation. *City of Montgomery v. Collins,* 355 So.2d 1111, 1114–15 (Ala. 1978). It has been held that the policy of reimbursement encourages a 'faithful and courageous discharge of duty on the part of public officers.' *Curry v. City of Portage,* 195 Wis. 35, 217 N.W. 705 (1928)."

*Snowden, supra,* 295 Md. at 436–37, 456 A.2d 380.

It appears to us that the *Snowden* ordinance differs from the one in this case in a most important aspect, *i.e.,* the exposure of the employees in *Snowden* to unusual risk of suffering financial liability as a result of the nature of their calling. As the *Snowden* Court put it:

"In this case, the County maintains, and we agree, that the public benefits from the challenged ordinance because its provisions better enable the County to recruit and retain qualified public safety employees, and to maintain morale. The ordinance affords necessary protection to those employees who, by the nature of their calling, are uniquely at risk of suffering financial liability as a result of their duties. The ordinance provides reimbursement only to one who has successfully defended against criminal or administrative charges." *Id.* at 438–39, 456 A.2d 380.

Newman and Ward conceded in the trial that their actions, which precipitated and upon which the criminal information was based were beyond the scope of their employment.

■ It is clear to this Court that the actions of Newman and Ward, upon which the criminal charges were based, did not fall within the scope of their authority or employment as Town Manager and Town Engineer. It is equally clear that those actions were not a result of their municipal duties and that to reimburse them for their legal expenses would not encourage the "faithful and courageous discharge of duty on the part of public officials." *Snowden, supra.* On the contrary, it would encourage the reverse.

We adopt the carefully researched and well drafted opinion of the trial judge and we affirm its findings and rulings:

### "I. Public Purpose

\* \* \*

■ The general rule is that expenditures by an administrative official are proper only insofar as they are authorized, explicitly or implicitly, by legislative enactment. *Stanson v. Mott,* 17 Cal.3d 206, 551 P.2d 1, 130 Cal.Rptr. 697 (1976). '[S]uch executive officials are not free to spend public funds for any "public purpose" they may chose, but must utilize appropriated funds in accordance with the legislatively designated purpose.' *Id.* [551 P.2d at] 6 [130 Cal. Rptr. at 702]. The legislative authorization must be in 'clear and unmistakable language.' *Mines v. Del Valle,* 201 Cal. 273, 287, 257 P. 530 (1927), quoted with approval in *Stanson,* 551 P.2d at 10 [130 Cal.Rptr. at 706]. Such a standard is not met in any of the statutory or charter provisions relied upon by defendants to justify the challenged expenditures.

\* \* \* \* \* \*

Defendants argue that the test to be applied by the Court on the public purpose issue is that set forth in *Williamsport v. Sanitary District,* 247 Md. 326, 231 A.2d 40, 44 (1967):

In reviewing the Town's action, it is only necessary that the legislative determination to spend a particular amount of public funds be reasonable and based on an honest judgment of those officials charged with care of the public purse that the expenditure is for the best interests of the city.

The *Williamsport* case can be distinguished from the present case both on the facts and on the law. The expenditure authorized by town officials in *Williamsport* was an obligation to make payments to the county sanitary district toward the increased costs of constructing the district's proposed sewerage treatment plant at an alternative location from the site originally chosen. This expenditure was authorized by town officials in order to avoid a possible threat to the health and welfare of town residents, and as such, was held not to be an *ultra vires* act. 231 A.2d at 44. The 'best interests of the city' in *Williamsport* thus involved the avoidance of a substantial threat to the health and welfare of the city residents. Contrary to Defendants' assertions, an expenditure of city funds to reimburse town officials or employers for the defense of criminal charges of official misconduct does not further the best interests of the city within the meaning of *Williamsport v. Sanitary District.*

The courts as a rule have attempted no judicial definition of a public as distinguished from a private purpose. *See, e.g., Frostburg v. Jenkins,* 215 Md. 9, 136 A.2d 852 (1957). In general, a public purpose has for its objective the promotion of the public health, safety, morals, general welfare, security, prosperity, and contentment of all the inhabitants or residents within the municipal corporation. *Seltenreich v. Fairbanks,* 103 F.Supp. 319 (D.Alaska), *aff'd.* 211 F.2d 83 (9th Cir.1954). It is important to keep in mind that the test of public use or purpose is not based upon the function or capacity in which or by which the public use is furnished (*i.e.,* Defendants' status and function as town mayor and council member). The right of the public at large to receive and enjoy the benefit of the use determines whether the use is public. *Sommers v. City of Flint,* 355

Mich. 655, 96 N.W.2d 119 (1959). *State ex rel. Gordon v. Rhodes,* 156 Ohio St. 81, 100 N.E.2d 225 (1951); 35 Am.Jur. 734, § 120. The public money must be spent 'with a political view for the good government and benefit of the community,' ... [and bear] ... 'a substantial relation to the public welfare.' *City of Frostburg v. Jenkins,* 214 [215] Md. 9, 136 A.2d 852, 857 (1957), cited with approval in *Williamsport v. Sanitary District, supra,* 231 A.2d at 43, 44.

■ It is generally agreed that a municipality has no power to reimburse a town official for his expenses incurred in defending himself from charges of official misconduct. *Board of Chosen Freeholders v. Conda,* 164 N.J.Super. 386, 396 A.2d 613 (1978); *see* 3 McQuillen, *Municipal Corporations,* (3d ed. 1973 rev.), § 12.137. The rationale behind the rule is that such an indebtedness against a city would constitute the application of money to an individual and not to a city purpose. *See, e.g., Chapman v. New York,* 168 N.Y. 80, 61 N.E. 108 (1901). The general rule in Maryland is that public funds of municipalities cannot properly be devoted to private uses, even when expressly authorized by the legislature. *City of Frostburg v. Jenkins,* 215 Md. 9, 136 A.2d 852 (1957); *Wilson v. Board of County Commissioners,* 273 Md. 30, 327 A.2d 488 (1974).

A New Jersey case presented a fact situation similar to that in the instant case. *See Township of Manalapan v. Loeb,* 126 N.J.Super. 277, 314 A.2d 81, *aff'd per curiam* 131 N.J.Super. 469, 330 A.2d 593 (1974). The case involved a complaint by a township for a declaratory judgment as to whether it was authorized to pay for legal expenses incurred by certain of its officers defending against an indictment handed down by a grand jury. A town committeeman had been charged with using a telephone credit card for personal calls and incurring expenses in excess of $200.00 which was paid from township funds. The town mayor and town business administrator were charged with having knowledge of the improper use of the credit card and failing to take the necessary steps to see that the township was reimbursed for

the amount of the calls. The indictment was dismissed against the mayor and administrator, and a jury found the committeeman not guilty. In spite of the favorable termination of the legal proceedings, the court in the declaratory judgment action held that the township was not authorized by statute or otherwise to indemnify its municipal officers for the cost of defending against a criminal indictment charging them with what amounted to official misconduct. 314 A.2d at 82 citing 56 *Am.Jur.*2d, Municipal Corporations, Etc., § 208, at 266, and 64 C.J.S., Municipal Corporations, § 183, at 341. In reference to Defendants' 'public purpose' argument in the present case, this Court adopts the words of the *Manalapan* court: 'Here, under no circumstances can it be said that the acts charged against . . . [the town employees] in the indictment were for the benefit of the municipality.' 314 A.2d at 82.

## II. *Personal Liability*

■ Once the Plaintiff has established that the expenditures were not for a public purpose, the burden shifts to Defendants to prove facts sufficient to justify relieving them of personal liability for the amounts expended.

### a. *Discretionary Function*

The Defendants contend that even if the expenditures authorized under Resolution 80–5 were not for a public purpose, the Defendants may not be held personally liable for the expenditures because they are immune from personal liability under Art. 23A, § 1B, (a), of the Maryland Code, which states that 'Officials of a municipal corporation, while acting in a discretionary capacity, without malice, and within the scope of their employment or authority shall be immune as officials or individuals from any civil liability for the performance of such actions.' Md.Ann.Code Art. 23A, § 1B (1981 repl. vol.). Defendants' argument in favor of personal immunity is based on their contention that the authorization of the expenditures was a discretionary act within the meaning of *James v. Prince George's County,* 288 Md. 315, 418 A.2d 1173 (1980).

■ The Court is of the opinion that Defendants' argument is without merit. Unlike the present case, the *James* case involved tort claims arising out of collisions between private automobiles and a county ambulance and fire truck. In that case, the Court of Appeals specifically cautioned that 'a court should be careful not to let the mere fact that decisions are made in performing the questioned task be determinative of whether liability attaches to the conduct, for "[i]n a strict sense, every action of a government employee, except perhaps a conditioned reflex action, involves the use of some degree of discretion." ' 418 A.2d at 1180, quoting from *Swanson v. United States*, 229 F.Supp. 217, 219–20 (N.D.Cal.1964). The Court then went on to define discretionary function as follows: '... an act falls within the discretionary function of a public official if the decision which involves an exercise of his personal judgment also includes, to more than a minor degree, the manner in which the police power of the state should be utilized.' 418 A.2d at 1180. Contrary to Defendants' assertion, the expenditure authorized under Resolution 80–5 was not a discretionary act within the meaning of the *James* case. As the Plaintiff correctly argues, if the funds expended by the Town Council under Resolution 80–5 were not for a public purpose, the expenditure was an *ultra vires* act outside the scope of Defendants' employment and Art. 23A, § 1B, (a) does not apply.

### b. *Qualified Immunity*

■ Defendants also cite *James v. Prince George's County, supra,* as authority for the proposition that the defendant 'council members have qualified immunity as public officials for discretionary acts performed without malice.'

\* \* \* \* \* \*

However, as discussed above, the *James* case dealt with the defense of qualified immunity available to a public official who commits a tort while performing an official duty that was discretionary rather than ministerial. *See,* 418 A.2d 1173. As the Maryland Court of Special Appeals has stated,

qualified immunity applies to actions for tort and has no application to acts which are *ultra vires.* *See, Smith v. Edwards,* 46 Md.App. 452, 418 A.2d 1227, 1231, *rev'd on other grounds,* 292 Md. 60, 437 A.2d 221 (1981). Thus, Defendants' argument on this issue is inapposite.

### c. *Due Care*

 Lastly, Defendants contend that even if the expenditures were not made for public purpose, they should not be held personally liable for the funds expended because they exercised good faith in authorizing the expenditures. Although Defendants have urged this Court to adopt a 'good faith' standard regarding public official immunity, no Maryland Court of Appeals decision has yet overruled the strict liability standard set forth in *Gloyd v. Talbott,* 221 Md. 179, 156 A.2d 665 (1959). *Gloyd* thus affords continued 'authority for the award of money judgments against members of the governing body of a municipality for the use and benefit of the municipality in cases where the said members illegally authorize the expenditure of public funds.' *See, Smith v. Edwards, supra,* 418 A.2d at 1231.

In urging the adoption of the good faith standard, Defendants have cited a decision of the Supreme Court of California, *Stanson v. Mott,* 17 Cal.3d 206, 551 P.2d 1, 130 Cal.Rptr. 697 (1976). In citing this decision, Defendants have employed the due care and good faith standards interchangeably. Contrary to the characterization, the *Stanson* court clearly distinguished between the strict liability, good faith, and due care standards. *See,* 551 P.2d at 15, n. 12 [130 Cal.Rptr. at 711, n. 12]. There the court adopted an objective due care standard rather than the subjective good faith standard urged by Defendants in the present case. Specifically, the *Stanson* court held that a public official could be held personally liable to repay improperly expended funds if he failed to exercise 'due care' or 'reasonable diligence' in authorizing the expenditures. 551 P.2d at 15 [130 Cal.Rptr. at 711].

This Court is not sure whether the Maryland Court of Appeals will follow the lead of the California court and adopt the due càre standard. In a similar case, the Court of Appeals declined to consider the question of good faith, because it found that the defendants had acted within the scope of their authority. *See, Smith v. Edwards,* 292 Md. 60, 437 A.2d 221, 228 n. 5 (1981). This Court does not reach the question of whether the due care standard should apply in Maryland, because the Defendants have failed to present sufficient evidence of their due care to bring the question into play. The Court does note that . . . Defendants should show evidence of both good faith and due care to present a serious challenge to the continued vitality in Maryland of the strict liability standard set forth in *Gloyd v. Talbott.*

. . . [T]he expenditures authorized by Defendants in Resolution 80–5 reimbursed the Town Manager and Town Engineer for legal expenses incurred in the defense of criminal information charging them with official misconduct. The Defendants presented no evidence that the employees made any demand for reimbursement from the Town Council, that they threatened to sue the Town, or that they threatened to leave the Town's employ because of the unpaid legal expenses. The minutes of the September 9, 1980 meeting of the La Plata Council reveal that John Newman requested that Councilman Gyorda pay the legal fees incurred by Mr. Newman. In Defendant Bowling's Answer . . . to Plaintiff's Interrogatories, he stated that '[v]erbal requests were made by John Newman to Mayor Bowling at the Town Hall on or about October 7, 1980.' As to expenses of Joseph Ward, the minutes of the September 9, 1980 Council meeting suggest that in fact Defendant Bowling knew or suspected that such an expenditure was not authorized by the Town Charter. The applicable portion of the minutes is quoted below in full:

Joe Ward appeared before the Council to ask if he and other Town employees had any protection against a Councilman viciously lashing out at an employee, causing an employee great expense as well as detriment to character?

Mayor Bowling replied that the Town Charter should protect the employees, but to this point hadn't because there are no provisions to control it. (Minutes, La Plata Council, September 9, 1980).

Although the meaning of the Mayor's statement is not completely free from ambiguity, at the very least it suggests a knowledge on the Mayor's part that the Town Charter provided no protection for employees in that situation.

The only evidence Defendants have presented of any reasonable care or diligence in authorizing the expenditures *sub judice* was a statement that they consulted with their attorney, and that Resolution 80–5 was drafted by or subject to the approval of their attorney. Defendants have presented no evidence as to exactly what they told their attorney, or how they characterized the proposed expenditures to him. The only other evidence of the attorney's knowledge of the situation is suggested by the two cases cited in the body of Resolution 80–5 as precedent for such expenditures (and presumably provided to the Town Council by the attorney).

An examination of the two cases suggests to the Court that the Defendants did not properly characterize the situation to their attorney. The first case cited in Resolution 80–5 involved reimbursement of legal expenses incurred by a police officer in an action brought against him to recover damages for false imprisonment. *See, City of Moorhead v. Murphy* [94 Minn. 123], 102 N.W. 219 (Minn.1905). In that case the expenditures were allowed by the court because the officer had been in the exercise of his official duties in the enforcement of a town ordinance. In the present case, Defendants have admitted that the actions which formed the basis of the criminal information against the Town Manager and Town Engineer were not within the scope of authority of John Newman or the scope of employment of Joseph Ward. Therefore, the *Moorhead* case is not good authority for the expenditures *sub judice.*

The second case cited in Resolution 80–5 involved reimbursement of a mayor for expenses incurred in the defense

of a libel suit. *See, Cobb v. City of Cape May,* 113 N.J.Super. 598, 274 A.2d 622 (1971). The court stated that if the mayor had uttered the alleged defamatory statements in connection with a public controversy involving action taken by the city council, of which he was a member, and if the statements were not made for purposes of defending his own reputation, the city properly paid for the defense of the mayor. 274 A.2d at 626. The court noted that '. . . where an action is defended as an official duty rather than for personal motives it is proper for the municipality to authorize payment of expenses.' 274 A.2d at 624, quoting from 10 McQuillin, *Municipal Corporation,* § 29.14 at 268. The *Marian Cobb* case is also clearly distinguishable from the present case. As stated above, the Defendants have admitted that the acts set forth in the criminal information were not within the scope of employment of those reimbursed under Resolution 80–5. This Court is of the opinion that both cases cited in Resolution 80–5 are inapposite, and their citation suggests that Defendants did not use due care in informing their attorney about the expenditures.

A more recent case that cited *Marian Cobb* involved a suit brought by a member of the Board of Education against the Board to recover legal expenses incurred in the successful defense of a criminal charge arising out of alleged acts of extortion. *See, Powers v. Union City Board of Education,* 124 N.J.Super. 590, 308 A.2d 71 (1973). Even though a statute specifically required the Board of Education to bear the costs incurred by a Board member in defending a criminal action for an act or omission arising out of and in the course of the performance of his duties, the court held that the Board member had failed to show that the fact his conduct arose out of or in the course of performance of the public duties. The court stated, 'in connection with criminal conduct the facts should be analyzed strictly rather than liberally, as that reimbursement of legal fees and expenses should only ensue when the circumstances are such as to fit clearly within the legislative limitations.' 308 A.2d at 75. As this Court has stated earlier in the Opinion, the reim-

bursement of legal fees arising out of criminal charges of official misconduct is not a public purpose within the meaning of the La Plata Town Charter or applicable case law.

## III. CONCLUSION

The Court holds that the Defendants did exceed their authority as Town Commissioners, as the Plaintiff has established that the expenditure of town funds by Defendants to reimburse town employees for legal expenses incurred defending themselves from criminal charges of misconduct in office was not an expenditure for a public purpose. Even if the Court assumes that the Court of Appeals would adopt the reasonable care doctrine as previously discussed in this Opinion, the Defendants have failed to establish that they used reasonable care in consulting with their attorney about the expenditures *sub judice* and, therefore, are personally liable for the funds expended under Resolution 80–5."

### *The Award of Attorney's Fees*

In *Smith v. Edwards,* 46 Md.App. 452, 462–63, 418 A.2d 1227 (1980) we affirmed the allowance of attorney's fees to be paid out of a fund created by damages awarded for the *ultra vires* acts of individual defendants who made up the governing body of the Friendship Heights Citizens Committee. Our underlying holding that the acts of those individuals were *ultra vires* was reversed in *Smith v. Edwards,* 292 Md. 60, 437 A.2d 221 (1981). As a result, the issue of the allowance of attorney's fees was not reached by the Court of Appeals. Although our holding on that issue in that case has no precedential value, we think that our reasoning on that issue in that case is appropriate in this case. The trial judge in the case before us refused to allow attorney's fees based on the authority of *Empire Realty Co. v. Fleisher,* 269 Md. 278, 285, 305 A.2d 144 (1973). *Empire* holds that attorney's fees will not be awarded to the prevailing party in the absence of statutory authority or special circumstances to justify their payment. In the case before us, the trial court made a finding that this case did not fall under the "special circumstances exception" to the general rule that each side

to an action pays its own attorney's fees. After referring to the *Empire* case, Judge Thompson pointed out for this Court in *Smith, supra,* 46 Md.App. at 462, 418 A.2d 1227:

"... [C]ourts have adopted a common fund doctrine under which counsel fees may be awarded where a taxpayer's suit has resulted in the creation of a fund for the benefit of the taxpayers. *See, e.g., Nance v. Town of Oyster Bay,* 54 Misc.2d 274, 282 N.Y.S.2d 324 (1967), *aff'd,* 30 App.Div.2d 918, 293 N.Y.S.2d 704 (1968); *Weiss v. Bruno,* 83 Wash.2d 911, 523 P.2d 915 (1974); Annot. 89 A.L.R.3d 690 (1979). The doctrine is based on the idea that, where a taxpayer has gone into court taking the risk of litigation upon himself, and has thereby conferred a benefit upon other taxpayers similarly situated, it is equitable to allow counsel fees out of the recovery. This doctrine has been recognized in Maryland in *Terminal Freezing and Heating Co. v. Whitelock,* 120 Md. 408, 87 A. 820 (1913) and *Estate of Leiman,* 32 Md. 225, 3 Am.Rep. 132 (1870), although these cases did not involve recovery by taxpayers.[1]

[1] Whitelock involved a common fund recovered for a committee of bondholders. Leiman involved a fund recovered for the benefit of creditors. It should be noted that in both of those cases the beneficiary of the suit had refused to bring the action. In the instant case the individual appellees were in control of the quasi corporation beneficiary at the time the suit was brought. Under these circumstances it is obvious that a demand that the taxing district sue its own governing body would have been futile."

We adopt the reasoning of *Smith, supra,* and hold that where a common fund, benefitting the public, has been created as a result of litigation through the successful efforts of a taxpayer, the award of reasonable attorney's fees to be paid out of that fund is proper.

We affirm in part and reverse in part, and remand the case for the consideration of an award of reasonable attorney's fees.

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART; CASE REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION.

COSTS TO BE PAID BY APPELLANTS.